For the foregoing reasons, summary judgment was appropriate.[4]

*Affirmed; costs to appellee.*

NATIONAL UNION FIRE INSURANCE CO., Plaintiff, Appellee,

v.

William T. TALCOTT, Jr., Defendant, Appellant.

No. 90–1945.

United States Court of Appeals, First Circuit.

Heard Feb. 8, 1991.

Decided April 30, 1991.

Brian A. O'Connell, with whom James F. Cosgrove and Cosgrove, O'Connell & Blatt, were on brief, Worchester, Mass., for defendant, appellant.

George A. Berman, with whom Therese M. LaRussa and Posternak, Blankstein &

Lund, were on brief, Boston, Mass., for plaintiff, appellee.

Before TORRUELLA, Circuit Judge, ALDRICH and BOWNES, Senior Circuit Judges.

PER CURIAM.

Appellant William T. Talcott, Jr., an attorney, purchased a professional liability insurance policy from appellee National Union Fire Insurance Company for the period extending from April 28, 1984, through April 28, 1985.[1] The policy specifically provided that all claims brought against the insured had to be reported during the policy period in which the claim was first made. On January 26, 1985, appellant was served with a summons and complaint in a legal malpractice action instituted against him in the state courts.[2] These facts notwithstanding, Talcott did not notify National Union of the pendency of this litigation until after the expiration date of the applicable policy period on April 28, 1985.

Relying on the parties' diverse citizenships, National Union filed a declaratory judgment action in the federal district court seeking a declaration that it had no obligation to defend or indemnify Talcott regarding the underlying legal malpractice suit. Presented with cross motions for summary judgment, the district court entered judgment for the plaintiff, declaring that the insurer was under no obligation to either represent or indemnify the insured because the policy at issue was a "claims made" policy and the claim had not been reported within the applicable policy period. The defendant now appeals, contending that the insurance company could not legally deny coverage absent a showing of prejudice arising from his noncompliance with the notice requirement. We affirm.

Applying Massachusetts substantive law, as the policy requires, we agree with the district court that the Supreme Judicial Court of Massachusetts's decision in *Charles T. Main v. Fireman's Funds Ins. Co.*, 406 Mass. 862, 551 N.E.2d 28 (1990), controls. A decade earlier, in *Johnson Controls, Inc. v. Bowes*, 381 Mass. 278, 409 N.E.2d 185 (1980), the Supreme Judicial Court held that Mass.Gen.Laws ch. 175, § 112 (requiring an insurer to make a showing of prejudice resulting from a late notice in order to avoid liability) applied as a matter of common law to all "occurrence" policies whether or not they were in existence at the time of the statute's enactment date.[3] In *Main*, however, the court relied on the difference in purpose behind the notice requirements in each of the two types of policies to decline to extend Mass. Gen.Laws ch. 175, § 112 to "claims made" policies either directly or through common law.[4] *Main*, 406 Mass. at 865–66 n. 3, 551 N.E.2d 28. This court recently recognized this distinction in *J.I. Corp. v. Federal Ins. Co.*, 920 F.2d 118, 120 (1st Cir.1990), where we held that the *Johnson Controls* holding applied exclusively to "occurrence" policies

---

1. Mr. Talcott had been and continued to be continuously insured by identical National Union policies from April of 1977 through April of 1986.

2. The legal malpractice action instituted by the Norfolk & Dedham Mutual Insurance Company remains pending in the Massachusetts Trial Court, Superior Court Department for Norfolk County (Civ. No. 84–1666).

3. An "occurrence" policy covers an act or omission which "occurs within the policy period, regardless of the date of discovery." *Main*, 406 Mass. at 863, 551 N.E.2d 28. A "claims made" policy, on the other hand, "covers the insured for claims made during the policy year and reported within that period or a specified period thereafter regardless of when the covered act or omission occurred." *Main*, 406 Mass. at 863–64, 551 N.E.2d 28; *see also J.I. Corp. v. Federal*

*Insurance Co.*, 920 F.2d 118, 120 n. 2 (1st Cir. 1990).

4. The purpose of the notice requirement in "claims made" policies is to ensure "fairness in rate-setting," *Main*, 406 Mass. at 864, 551 N.E.2d 28; whereas its purpose in an "occurrence" policy is "to permit an insurer to make an investigation of the facts ... relating to liability," *id.* A late notice would clearly always inhibit the insurer's task of setting its future premiums and reserves with full knowledge of the outstanding claims it is obligated to meet, while it would not necessarily have the same effect with regard to the investigation of the facts pertaining to the insured event. Hence, a showing of prejudice is justly required in the latter while not in the former.

and not to those that were "claims made." Thus, in order for an insurer to be entitled to deny coverage under a "claims made" policy, it must only show that the insured did not report the claim within the same policy year in which he received notice of it; no showing of prejudice need be made.

It follows, then, that Talcott's failure to seasonably notify National Union of the existence of the underlying action is fatal to his claim. The fact that his policy was of the "claims made" variety, requiring strict compliance with the notice requirement, is beyond serious dispute, as at least three clauses in the policy so provided. The section of the policy entitled "Coverage" plainly states that coverage is afforded to claims "first made against the insured and reported to the Company during the policy period." Similar language appears in the section entitled "Claims Made Provisions" and in a separate "Notice" at the top of the policy's first page. There is also no dispute over the fact that he was on notice of the claim asserted against him for at least three months prior to his policy's expiration date, since summons was served upon him on January 26, 1985.[5] Yet, Talcott did not report the claim to National Union until well after April 28, 1985. Under these circumstances, then, National Union was legally justified in denying coverage to Talcott, and the district court correctly granted judgment in its favor.

Talcott attempts to secure coverage, however, by arguing that his policy was not a "claims made" policy and that his situation is therefore not controlled by *Main.* For this, he relies on language contained in the policy under the notice provision requiring the insured to give notice to the insurer "as soon as practicable." However, as the *Main* court made clear:

> There are, in general, two types of notice requirements found in policies. [The] requirement that notice of the claim be given to the insurer "as soon as practicable" after the event which gives rise to the coverage ... is almost always found in occurrence policies and frequently is found in claims-made policies. The other type of notice provision requires reporting of the claim during the term of the policy or within a short period of time [thereafter] ... is always found in claims-made policies and is never found in occurrence policies.

406 Mass. at 864, 551 N.E.2d 28. Thus, it is evident that a "claims made" policy can contain the "as soon as practicable" language and remain "claims made," since the "claims made" character of a policy only turns on the existence of the requirement that the claim be reported during the term of the policy. In the policy at bar, the quoted language referred to the pre-claim situation where the insured became "aware of any act, error or omission which could reasonably be expected to be the basis of a claim" and the policy required him or her to notify the insurer "as soon as practicable." This argument is therefore meritless.

■ The balance of appellant's argument is undeserving of extensive treatment. Talcott also submits that the limitation contained in the policy is contrary to public interest (and hence unenforceable) because it excludes claims that arise late in the policy year and are reported only after the expiration of the policy period. Contrary to appellant's basic premise, however, the policy at issue does provide for an extended reporting period which allows the insured to purchase coverage at an additional (fractional) cost for claims first made after the expiration of the policy period and of which he simply did not avail himself. Thus, the argument falls under the force of its own weight.

Similarly unavailing is appellant's argument that the fact that the notice was received when he was still covered by another policy from the same insurance company compels a different result. The argument fails for the simple reason that continuous coverage was wholly immaterial to the underlying rationale of *Main.* The essence of that decision was the right of the insurer to set its future premiums and re-

---

**5.** The policy defined "claim" as a "demand received by the insured for money or services including the service of a suit or the institution of arbitration proceedings against him."

serves with full knowledge of the outstanding claims it is obligated to meet, and this circumstance requires strict adherence to the notice requirement regardless of whether the same company continued to provide coverage (through a different policy) at the date the notice was received. *See supra* n. 4. Appellant's contention that this circumstance nevertheless violates the reasonable expectations of the insured, or is misleading and unconscionable, is likewise empty. The policy at bar clearly stated that a claim brought against the insured had to be reported during the policy period in which the claim was first made; if, for a number of reasons, the reporting could not possibly be made within the applicable policy period, the policy provided the insured with the right to purchase coverage for such claims. We see nothing misleading, unreasonable or unconscionable about this.

*Affirmed.*