**Thomas A. DiLUGLIO, Plaintiff, Appellant,**

v.

**NEW ENGLAND INSURANCE COMPANY, Defendant, Appellee.**

No. 91–1678.

United States Court of Appeals, First Circuit.

Heard Jan. 10, 1992.

Decided March 23, 1992.

Thomas A. DiLuglio, pro se.

Paul A. Izzo with whom Erik Lund and Posternak, Blankstein & Lund, Boston, Mass., were on brief, for appellee.

Before TORRUELLA, Circuit Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

Appellant Thomas A. DiLuglio, Esquire, a Rhode Island attorney, challenges a district court judgment declaring that the attorney fees appellant incurred in successfully defending against three malpractice actions brought by former clients were not recoverable under the professional liability policy issued by New England Insurance Company ("NEI"). Finding no error, we affirm.

## I

## BACKGROUND

The declaratory judgment was based on stipulated facts. Beginning in June 1983, appellant DiLuglio contracted with NEI for a series of consecutive one-year professional liability insurance policies of a type commonly referred to as "claims-made" policies. The NEI policies provided that NEI would pay "any claim or claims ... first made against the Insured *and reported* to the Company *during the policy period* ... arising out of any act, error, or omission of the Insured in rendering or failing to render professional services." (emphasis add-

ed).[1] In addition to insurance against damage awards, the NEI policies afforded appellant coverage for "claims expenses," including attorney fees incurred in the defense of a malpractice action, provided that the insured was not to incur attorney fees without the prior written consent of NEI.

Between November 1986 and October 1987, two former clients brought three separate actions against appellant, alleging that he disregarded their explicit instructions and refused to surrender various documents relating to the formation of a corporation. Appellant concedes that he failed to notify NEI of the malpractice complaints, and that he retained counsel without prior consultation with NEI. Ultimately, none of the plaintiffs obtained any relief in the prolonged malpractice litigation against DiLuglio.

Appellant first notified NEI of the three malpractice actions in February 1990, claiming that the attorney fees he incurred in the amount of $88,629.31 were "claims expenses" recoverable under the 1989–1990 NEI professional liability policy. NEI denied coverage, on the ground that the malpractice actions were not reported to NEI within the same policy year during which the actions were commenced against appellant.

The United States District Court for the District of Rhode Island entered summary judgment against appellant, declaring that appellant did not provide NEI with timely notification of the malpractice actions as required under the insurance policies and that Rhode Island law would not require an insurer to demonstrate actual prejudice from late notification under a "claims-made" policy.[2]

---

1. The "policy period" was defined as "the period of time between the inception date shown in the [Policy] Declarations and the effective date of termination, expiration or cancellation of coverage." According to the Policy Declarations, the "policy period" for each policy was *one year.*

2. The parties are in apparent agreement that Rhode Island law governs these insurance con-

tracts. *See, e.g., Mathewson Corp. v. Allied Marine Indus., Inc.,* 827 F.2d 850, 853 n. 3 (1st Cir.1987) (adopting parties' "express preference" as to applicable state law). The NEI insurance contracts call for the application of the law of the state in which the "policy is issued." The NEI policy was issued in Massachusetts, but was mailed to appellant in Rhode Island.

## II

### DISCUSSION [3]

■ There can be no genuine doubt that appellant's notification to NEI was unreasonably and unjustifiably overdue.[4] Appellant contends, nonetheless, that his tardy notification should be excused, under Rhode Island law, unless NEI can demonstrate actual prejudice due to the two-to-three year notice delay. *See Pickering v. American Employers Ins. Co.,* 109 R.I.

143, 282 A.2d 584 (1971) (since insurance policies often are adhesion contracts, the insurer is not "permitted to declare a forfeiture of the bargained-for protection" without showing prejudice from notice delay). Appellant asserts that NEI suffered no prejudice because (1) appellant successfully defended against all three malpractice actions, and (2) the "claims expenses" appellant incurred for legal services were reasonable in amount.[5]

3. Appellant contends that the district court failed to comply with Fed.R.Civ.P. 52(a), which requires the court, in an action tried without a jury, to "find the facts specially and state separately its conclusions of law." Pouncing on the term "separately," appellant objects to the fact that the court's detailed findings and conclusions were made *ore tenus,* rather than in a formalized document. The argument is anemic. Rule 52(a) explicitly provides that "[i]t will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court...." *See In re Rare Coin Galleries of America, Inc.,* 862 F.2d 896, 900 (1st Cir.1988) (brief oral summation of findings from bench satisfies rule 52(a)).

4. If the insured "acts reasonably and with all reasonable dispatch," late notice will not bar recovery under an *"occurrence"* policy:

> In determining whether notice was given within a reasonable time, the following circumstances, among others, have been considered to be relevant: the length of delay in giving the notice, the reasons for the delay and the probable effect of the delay on the insurer.... Consideration of the effect of the delayed notice involves the extent, if any, of prejudice suffered by an insurer because it was not notified of a loss or claim within the reasonable time.

*Pickering v. American Employers Ins. Co.,* 109 R.I. 143, 282 A.2d 584, 593 (1971). Appellant has yet to provide a satisfactory explanation for the two-to-three year notice delay. Appellant argued before the district court, and argues again on appeal, that he was excused from notifying NEI within one year after the lawsuits were filed. The policy requires notice in two situations: (1) when the insured becomes "aware of any act, error or omission which could reasonably be expected to be the basis of a claim or suit covered [by the policy]," and (2) when a "claim is made or suit is brought against the Insured."

First, appellant argues that the groundless lawsuits his clients filed against him cannot be said to have given rise to professional liability "claims" under the policy. Appellant's argument proves too much; if true, appellant could not now recover, as a "claims expense," attorney fees incurred in the process of defending against otherwise *noncompensable* claims. Sec-

ond, appellant argues that the allegations underlying the clients' lawsuits were so obviously lacking in merit that he never "reasonably expected" to have to make any insurance claim against NEI. However, the insurance policy's "reasonable expectation" requirement clearly applies only to the insured's *pre-suit* actions or omissions that might expose him to professional liability. Once an actual professional liability action has been instituted, notification is mandatory. *See, e.g., MGIC Indem. Corp. v. Central Bank of Monroe, La.,* 838 F.2d 1382, 1388 (5th Cir.1988) (claim is "made," at the latest, when suit is filed against insured). The district court properly held that appellant delayed unreasonably in providing notice to NEI.

5. NEI's denial of coverage is based on another, independent ground. The policy required NEI's *written consent* prior to the incurrence of any "claims expenses." The written consent requirement presumably serves two purposes: (1) to provide NEI with an opportunity to control the course of litigation by exercising a veto over the choice of an insured's attorney, and (2) to limit the attorney fees compensable under the policy to a "reasonable" amount. Notwithstanding the fact that NEI characterizes its prior consent as an absolute condition precedent to coverage, it is arguable that the collateral "notice" provision would be subject to the rule in *Pickering,* which would excuse appellant's late notification of intention to incur "claims expenses" unless there was a showing of prejudice to NEI. Although prejudice might be readily inferred *solely* from appellant's disregard of the written consent requirement, NEI made no attempt to prove actual prejudice to its asserted interests. As noted, since appellant ultimately succeeded in defending against all claims, it is not patently inferable that NEI was prejudiced either by its lack of control over the course of the litigation, or by its inability to designate an attorney of its own choosing. Similarly, while alleging generally that the attorney fees incurred by appellant were exorbitant, NEI did not demonstrate that prior consent to appellant's retention of counsel would have resulted in a reduced fee. As a result of its tactical decision, NEI must now rely entirely on its contention that the *Pickering* "prejudice" requirement does not apply to these "claims-made" policies.

Unlike the "claims made" policy at issue in the present case, *Pickering* involved an "occurrence" policy. Occurrence policies typically provide coverage for any act or omission by an insured occurring during the period in which the insured maintained the policy, even if the claim ultimately made against the insurance company was neither discovered nor reported to the insurance company until after the expiration of the policy period. Since "occurrence" policies specifically protect the insured from liability claims arising from the insured's own acts and omissions, *see, e.g., Pickering,* 282 A.2d at 593 (uninsured motorist provision of automobile liability insurance policy), the policy merely requires notice to the insurer within a "reasonable" time after either the occurrence or the discovery of the covered act or omission, thereby enabling the insurance company to undertake a timely investigation. *See, e.g., Stine v. Continental Cas. Co.,* 419 Mich. 89, 349 N.W.2d 127, 131 (1984) (under occurrence policy, insured event is a "definite, easily identifiable and notorious event such as an automobile accident [or] a fire" and the "insurer is ordinarily able to conduct a prompt investigation of the incident and make an early assessment of related injuries and damages"). As the risks assumed under an "occurrence" policy often entail delays of unpredictable duration between the occurrence of the covered act or omission and any ultimate payout by the insurer (the "tail" exposure), premium rates tend to be significantly higher than those charged for comparable "claims-made" policies.

A typical "claims-made" or "discovery" policy, on the other hand, covers acts and omissions occurring *either before* or *during* the policy term, provided the claim is discovered *and* reported to the insurer during the same policy term. *See* John A. Appleman & Jean Appleman, *Insurance Law & Practice* 312 (1979).[6] As it is often difficult to ascertain the precise date of the act or omission which constituted the alleged malpractice on the part of the insured, *Zuckerman v. National Union Fire Ins. Co.,* 100 N.J. 304, 495 A.2d 395, 399 (1985), the pivotal event for insurance coverage purposes becomes the date the claim is *made* against the insured, rather than the date of the act or omission forming the basis for the claim.

In *Charles T. Main, Inc. v. Fireman's Fund Ins. Co.,* 406 Mass. 862, 551 N.E.2d 28, 30 n. 3 (1990), the Supreme Judicial Court ("SJC") held inapplicable to "claims-made" policies the Massachusetts "occurrence" policy rule, *see Johnson Controls, Inc. v. Bowes,* 381 Mass. 278, 409 N.E.2d 185 (1980), which requires an insurer to demonstrate actual prejudice from the notice delay. *See National Union Fire Ins. Co. v. Talcott,* 931 F.2d 166, 168 (1st Cir. 1991) (applying *Main* in diversity action involving "claims-made" policy). The premiums on "claims-made" policies can be set appreciably lower than comparable "occurrence" policy premiums. By limiting the maximum "tail" period to one year under a "claims-made" policy, an insurer avoids the increased risks associated with future inflation, the prospect of increasing jury awards, and unanticipated changes in the substantive law of professional liability. *Main,* 551 N.E.2d at 29; *see also Zuckerman,* 495 A.2d 395, 399; *Stine,* 349 N.W.2d at 131. Were "claims-made" policies subjected to the *Pickering* "prejudice" rule, there would be no inducement to insurers to continue to offer coverage at premium rates substantially below comparable "occurrence" policy rates. The elimination of "claims-made" coverage would exacerbate the existing crisis in professional liability insurance coverage, or force significantly higher premiums for assuming the increased risk. *Main,* 551 N.E.2d at 30.

The district court, acknowledging that the Rhode Island Supreme Court has yet to

---

6. Unlike the exclusively prospective coverage afforded under "occurrence" policies, "claims-made" policies allow an insured the distinct benefit of *retroactive* coverage for any unknown past act or omission which may expose the insured to a liability claim in the future, provided the insured reports the claim to the insurer within the policy period during which the claim is made. *See Stine,* 349 N.W.2d at 131; *Zuckerman v. National Union Fire Ins. Co.,* 100 N.J. 304, 495 A.2d 395, 400 (1985).

address directly the applicability of the *Pickering* "prejudice" rule to "claims-made" policies, decided that the rationale adopted in *Main* and *Talcott* likely would obtain under Rhode Island law as well. *See Amherst Sportswear Co. v. McManus,* 876 F.2d 1045, 1048 (1st Cir.1989) (absent state caselaw dealing with an issue of state law, the federal court may consider all available legal sources, including the "majority rule" adopted in other jurisdictions, in determining the rule of law the state's highest court is likely to adopt); *Redgrave v. Boston Symphony Orchestra, Inc.,* 855 F.2d 888, 903 (1st Cir.1988), *cert. denied,* 488 U.S. 1043, 109 S.Ct. 869, 102 L.Ed.2d 993 (1989).

We must make an independent determination as to the rule of law the state's highest court is likely to adopt. *See Salve Regina College v. Russell,* — U.S. —, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). First, we note that the conclusion adopted by the district court finds overwhelming support in numerous jurisdictions. *See, e.g., Burns v. International Ins. Co.,* 929 F.2d 1422, 1425 (9th Cir.1991) (holding that application of California's notice-prejudice rule to "claims-made" policy "would ... rewrite the policy"); *J.I. Corp. v. Federal Ins. Co.,* 920 F.2d 118, 120 (1st Cir.1990) (holding that unambiguous language of "claims-made" policy precludes application of Massachusetts law requiring insurer to show actual prejudice due to notice delay); *Esmailzadeh v. Johnson & Speakman,* 869 F.2d 422, 424–25 (8th Cir.1989) (holding that "claims-made" notice provision is the "very description of the risk covered," such that application of Minnesota's prejudice rule would "alter a basic term of insurance contract"); *United States v. A.C. Strip,* 868 F.2d 181, 187 (6th Cir.1989) (holding that extension of the reporting period prescribed in "claims-made" policy would "require the insurer to provide coverage for risks not assumed") (Ohio law); *MGIC Indem. Corp. v. Central Bank of Monroe,*

La., 838 F.2d 1382, 1385–87 (5th Cir.1988) (holding that timely notice under "claims-made" policy is absolute condition precedent to coverage under Louisiana law); *Gulf Ins. Co. v. Dolan, Fertig & Curtis,* 433 So.2d 512, 515 (Fla.1983) (holding that extension of reporting period under "claims-made" policy "negates the inherent difference" between "occurrence" and "claims-made" coverage); *Stine,* 349 N.W.2d at 134 (holding that "notice" provision in "claims-made" policy "defines the coverage available rather than establishing a notice requirement"); *Zuckerman,* 495 A.2d at 406 (holding that application of prejudice rule to "claims-made" policy would constitute "unbargained-for expansion of coverage, gratis").

Since the reporting period prescribed in a "claims-made" insurance policy defines the scope of coverage, and allows the insurer to set its premiums below the levels charged for comparable "occurrence" policies, we believe that the Rhode Island Supreme Court, like most other courts, would conclude that prejudice may be presumed where notice is not provided within the policy period. In *Gereboff v. Home Indem. Co.,* 119 R.I. 814, 383 A.2d 1024, 1025 (1978), a post-*Pickering* decision, the Rhode Island Supreme Court upheld the notice requirement prescribed in a "claims-made" professional liability insurance policy where the insured reported a claim four years after the expiration of the policy period. Although the precise issue of the applicability of the prejudice rule was not before it, the court stated that late notice was "fatal" to the insured's claim against the insurance company. *Id.* 383 A.2d at 1027. Given the overwhelming weight of authority in other jurisdictions, and the categorical language of the *Gereboff* court, we agree with the district court that the Rhode Island Supreme Court would not require NEI to establish actual prejudice from appellant's late notification.[7]

7. We further note that there are no special circumstances or policy considerations in the present case which would warrant a refusal to enforce the notice terms of the insurance contract, as written. Standard "claims-made" policies, like the NEI policy, consistently have withstood the challenge that they are inherently violative of public policy. *See, e.g., Langley v. Mutual Fire Marine & Inland Ins. Co.,* 512 So.2d 752, 757–63 (Ala.1987), *unrelated proposition*

▮ Finally, appellant contends that an exception should be recognized in the present circumstances, since he maintained *continuous* coverage under a series of successive one-year "claims-made" policies with the same insurance company. *Cf. Main,* 406 Mass. 862, 551 N.E.2d 28 (1990). The attempted distinction is untenable. In *Talcott,* 931 F.2d at 168–69, we expressly rejected a similar argument, holding that "[t]he essence of [*Main*] was the right of the insurer to set its future premiums and reserves with full knowledge of the outstanding claims it is obligated to meet," and that "continuous coverage was wholly immaterial to the underlying rationale." [8]

*Affirmed.*

---

overruled in *Hickox v. Stover,* 551 So.2d 259 (Ala.1989); *Gulf Ins. Co.,* 433 So.2d at 514. Rhode Island courts have even upheld "claims-made" policies that disclaim not only prospective coverage, but *retroactive coverage* for acts or omissions preceding the policy term, provided the insured *knowingly* purchased such limited coverage. *Gereboff,* 383 A.2d at 1028 ("plaintiffs knowingly purchased a policy that excludes coverage for prior acts."). The NEI policy prominently notes, both in its heading and its definitions of coverage, that appellant was purchasing a "claims-made" policy which required strict adherence to the one-year reporting period. Additionally, as an attorney, DiLuglio was in a particularly advantageous position to appreciate the scope of coverage prescribed under these standard "claims-made" policies. *Cf.*

*MGIC,* 838 F.2d at 1387 (notice-prejudice rule is based in principles of equity where "strict adherence to the terms of the notice provision would result too harshly against unsophisticated consumers" who are "unlikely to be conversant with all the fine print of their policies.").

8. Indeed, there is no indication in *Main* that the insured did not maintain continuous coverage at the time it asserted its claim against the insurance company. The SJC merely reported that the "claims-made" policy period extended from May 1984 to May 1985, but that the insured first notified the insurer in March 1987. *Main,* 551 N.E.2d at 29. The opinion is conspicuously silent as to the status of Main's coverage in March 1987.