**AOK LANDS, INC., Plaintiff and Appellant,**

**v.**

**SHAND, MORAHAN & COMPANY and Mutual Fire, Marine & Inland Insurance Co., Defendants and Appellees.**

**No. 910477.**

Supreme Court of Utah.

Sept. 20, 1993.

Robert A. Echard, Ogden, for plaintiff and appellant.

Richard L. Evans, Salt Lake City, for defendants and appellees.

HALL, Chief Justice:

Plaintiff AOK Lands, Inc. ("AOK"), appeals the decision of the Second Judicial District Court granting summary judgment for defendants Shand, Morahan & Company and Mutual Fire, Marine & Inland Insurance Co. and therefore denying AOK's claim to recover under an "errors and omissions" insurance policy issued by defendants. We affirm.

The facts of this case are not in dispute. During November and December of 1977,

Utah Title and Abstract Company ("Utah Title") prepared documents for AOK conveying certain real property. Unbeknownst to AOK, a Utah Title employee subsequently altered the documents, resulting in AOK's loss of valuable property. The alteration took place in December 1977. AOK learned of the alteration during the summer of 1979 and filed a negligence action against Utah Title in December 1979.

After extensive litigation and a bifurcated trial, judgment in the amount of $400,000 was entered against Utah Title on January 15, 1988. In May 1988, AOK first learned that an errors and omissions professional liability policy (the "Policy") had been issued by defendants[1] in favor of Utah Title for two one-year periods: The first ran from February 5, 1976, until February 5, 1977, and the second ran from February 5, 1977, until February 5, 1978. During the course of AOK's negligence action, Utah Title denied the existence of any errors and omissions policy covering its actions.

In June 1988, AOK notified defendants of its $400,000 judgment against Utah Title and demanded payment under the Policy. Defendants refused to honor the Policy, claiming that recovery was barred because (1) even though Utah Title's negligence occurred while the Policy was in force, no claim was made against Utah Title during the actual Policy period as mandated by the "claims made" provision,[2] and (2) as the insured, Utah Title failed to properly notify defendants of the lawsuit against Utah Title, also in violation of the Policy provisions.[3] AOK brought suit against defendants, demanding that they pay the Policy limits toward AOK's judgment against Utah Title.

Defendants moved for summary judgment, which the trial court granted. The trial court found that the claims-made provision barred recovery by AOK. It also determined that failure to notify defendants of AOK's lawsuit against Utah Title until eight years had passed and a $400,000 judgment was in place violated the Policy terms and materially prejudiced defendants. AOK now appeals the trial court's decision.

■ Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[4] This case involves the legal interpretation of an insurance contract. We accord the trial court's legal conclusions regarding the contract no deference but review them for correctness.[5]

On appeal, AOK claims that enforcement of the claims-made provision is contrary to state law because it shortens the applicable

---

1. Shand, Morahan & Company acted as the agent of Mutual Fire, Marine & Inland Insurance Company in issuing and managing the Policy. Because both companies are named defendants in this action and are represented by the same counsel, we will refer to the entities collectively as "defendants."

2. The claims-made provision of the Policy states:

   *This policy applies to CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD, arising from professional services performed:*
   (a) during the policy period, or
   (b) prior to the effective date of this insurance provided the Insured had no knowledge of any claim or suit, or any act, error or omission that might result in a claim or suit, as of the date of signing the application for this insurance and there is no previous policy or policies under which the insured is entitled to indemnity for such claim or suit.

(Emphasis in original.)

3. The notice provision of the Policy reads as follows:

   *1. Notice of Claim or Suit: The Insured shall, as a condition precedent to their [sic] right to the protection afforded by this insurance, give to the Company as soon as practicable, notice*
   (a) *of any claim made against them.*
   . . . .
   *In the event claim is made or suit is brought against the Insured, the Insured shall IMMEDIATELY forward to the Company every demand, notice, summons or other process received by him or his representatives.*
   (Emphasis in original.)

4. Utah R.Civ.P. 56(c); *Alf v. State Farm Fire & Casualty Co.*, 850 P.2d 1272, 1274 (Utah 1993); *Clover v. Snowbird Ski Resort,* 808 P.2d 1037, 1039 (Utah 1991).

5. *Alf,* 850 P.2d at 1274; *Clover,* 808 P.2d at 1040.

statute of limitations. It also asserts that such policies are contrary to public policy and are unconstitutional. We begin our analysis by discussing the nature of a claims-made policy and then address each of AOK's claims in turn.

Historically, there have been two types of errors and omissions insurance policies for professionals: the occurrence policy and the claims-made policy.[6] Claims-made professional liability coverage has become increasingly prevalent and generally has supplanted the occurrence policy as the usual form of professional liability insurance.[7]

The typical claims-made policy provides insurance coverage for acts or omissions occurring either before or during the term of the policy, provided the claim is discovered and reported during the same policy term.[8] An occurrence policy, on the other hand, "generally is one in which indemnity is provided no matter when the claim is brought for the misdeed complained of, providing [that the act or omission] occurred during the policy period."[9] As the United States Supreme Court stated:

> An "occurrence" policy protects the policyholder from liability for any act done while the policy is in effect, whereas a "claims made" policy protects the holder only against claims made during the life of the policy.[10]

A claims-made policy provides the benefit of retroactive coverage for errors and omissions that occurred before a policy is even purchased.[11]

In this case, the allegedly negligent act took place in December 1977. AOK discovered the error in June or July 1979 and filed suit against the insured, Utah Title, in December 1979. Therefore, the claim arose at the earliest in June 1979 (when the negligent act was discovered) and at the latest December 1979 (when suit was filed against Utah Title).

■ The last policy issued to Utah Title by defendants expired on February 5, 1978, at least sixteen months *before* AOK's claim conceivably was made against Utah Title. The Policy specifically states that it applies only to "claims made against the insured during the policy period." This language is not ambiguous and specifically precludes the claim in this case. Unless a specific statute, constitutional provision, or public policy dictates otherwise, this court construes unambiguous contracts according to their usual and ordinary meaning.[12]

■ AOK claims that the requirement that a claim be made against the insurer within the one-year policy period violates the applicable statute of limitations for bringing claims against an insurer. We disagree. Under the Policy, the right to assert a claim first belonged to the insured, Utah Title. As stated above, AOK's negligence claim against Utah Title was *not* made during the policy period as the Policy mandated. AOK has no claim against defendants because, as a matter of law, Utah Title never had one.[13] Hence, AOK's claim

---

6. *Stine v. Continental Casualty Co.,* 419 Mich. 89, 349 N.W.2d 127, 130 (Mich.1984); *Zuckerman v. National Union Fire Ins. Co.,* 100 N.J. 304, 495 A.2d 395, 398 (1985).

7. *Zuckerman,* 495 A.2d at 398; *see also Stine,* 349 N.W.2d at 130 (noting that claims-made policies are normally written for architects, engineers, accountants, attorneys, physicians, and other professionals).

8. *DiLuglio v. New England Ins. Co.,* 959 F.2d 355, 358 (1st Cir.1992); *Sletten v. St. Paul Fire & Marine Ins. Co.,* 161 Ariz. 595, 780 P.2d 428, 430 (App.1989); *Zuckerman,* 495 A.2d at 398. Under some claims-made policies, notice of a claim against the insured must be given to the insurer within the policy period. *See DiLuglio,* 959 F.2d at 358 n. 6. The policy at issue here states only that notice of a claim against the

insured be reported "as soon as practicable." *See supra* note 3.

9. *Stine,* 349 N.W.2d at 130.

10. *St. Paul Fire & Marine Ins. Co. v. Barry,* 438 U.S. 531, 535 n. 3, 98 S.Ct. 2923, 2926 n. 3, 57 L.Ed.2d 932 (1978).

11. *See DiLuglio,* 959 F.2d at 358 n. 6.

12. *See Alf,* 850 P.2d at 1274; *Fire Ins. Exch. v. Alsop, D.C.,* 709 P.2d 389, 390 (Utah 1985) (per curiam).

13. Indeed, during the course of AOK's negligence action against Utah Title, the title company repeatedly denied that it had any insurance

was not dismissed because it was not filed within the applicable limitations period; it was dismissed because AOK *had no legal claim under the Policy at all.*[14] AOK's statute of limitations argument is therefore meritless.

■ AOK next asserts that claims-made policies violate public policy by unreasonably limiting coverage for the policies' beneficiaries. AOK seems to be claiming, at least in part, that its reasonable expectations of coverage were violated by the terms of the Policy. The allegation that claims-made policies violate public policy has been addressed and rejected by numerous courts throughout the country.[15]

Claims-made policies were developed primarily to address situations in which the error or omission is difficult to pinpoint and may have occurred over an extended period of time. As the Michigan Supreme Court stated:

> From an underwriting perspective, occurrence [as opposed to claims-made] policies are unrealistic for [professional liability] risks because of the long or open "tail" exposure which results....
>
> "Claims made" policies ... enabl[e] the insurer to underwrite the risk, compute the premiums, and establish reserves with greater accuracy, safe in the assumption that liability will be limited to claims actually made during the policy for which the premium is computed.... As a result, the insurer is better able to predict the limits of its exposure and more accurately estimate the premium

rate schedule necessary to accommodate the risk undertaken.[16]

The insured, on the other hand, receives the countervailing benefit of lower premiums than would be necessary for occurrence policies.[17]

Under the Policy, Utah Title received full retroactive coverage for any negligent acts or omissions, so long as the claim was made during the policy period.[18] It also provided that during the Policy's life, Utah Title could notify defendants of "any occurrence that may subsequently give rise to a claim" and Utah Title would receive coverage for that occurrence even if it did not amount to an actual claim until after the Policy period expired. Moreover, as discussed above, claims-made policies seem to address the realities of professional liability coverage while providing lower rates for insureds. We see nothing inherently unfair in structuring a policy in this manner.

Furthermore, AOK's public policy argument fails to the extent that it relies on the assertion that claims-made policies frustrate reasonable expectations of coverage. In *Alf v. State Farm Fire & Casualty Co.,*[19] we reiterated our conclusion that the reasonable expectations doctrine is not valid in Utah.[20] We therefore reject AOK's public policy argument.

AOK's next attack on the Policy is constitutionally based. It claims that the Policy is tantamount to an unconstitutional statute of repose because it improperly limits the amount of time in which a claim may be brought against the defendants.

policy that would indemnify it. Evidently, Utah Title never doubted the fact that the Policy did not apply, or it would have attempted to invoke its coverage.

**14.** We note that nothing would have prohibited AOK from recovering under the Policy as a third-party beneficiary if the Policy's provisions were met.

**15.** *See, e.g., Zuckerman,* 495 A.2d at 400–05, and cases cited therein; *Stine,* 349 N.W.2d at 138–39; *Safeco Title Ins. Co. v. Gannon,* 54 Wash.App. 330, 774 P.2d 30, 36 (1989). *See generally* 7A John A. Appleman, *Appleman's Insurance Law and Practice,* § 4504.01 (Liebo ed. Supp.1992) [hereinafter *Appleman's* ].

**16.** *Stine,* 349 N.W.2d at 131; *see also Zuckerman,* 495 A.2d at 399; *Safeco,* 774 P.2d at 34.

**17.** *Safeco,* 774 P.2d at 34; *Appleman's,* § 4504.-01.

**18.** The Policy's retroactive coverage is subject to the common exception that the acts or omissions for which coverage is sought were unknown to the insured at the time coverage was afforded. *See supra* note 2.

**19.** 850 P.2d 1272 (Utah 1993).

**20.** *Id.* at 1275; *see also Allen v. Prudential Property & Casualty Ins. Co.,* 839 P.2d 798, 805–06 (Utah 1992).

AOK compares its situation to that of the plaintiff in *Berry v. Beech Aircraft Corp.*[21] In *Berry,* we held that the statute of repose in the Utah Product Liability Act was unconstitutional under article I, section 11 of the Utah Constitution.[22] A statute of repose "bars all actions after a specified period of time has run from the occurrence of some event other than the occurrence of an injury that gives rise to a cause of action."[23]

The *Berry* decision is not applicable to this case. A statute of repose, like a statute of limitations, is implicated only if a cause of action against the party asserting the time limitation actually existed. Here, neither Utah Title nor AOK ever had a cause of action against defendants because no claim was made during the life of the Policy. Thus, our reasoning for rejecting AOK's statute of limitations argument is equally applicable here.

·AOK also challenges the validity of the Policy's notice provision. The trial court ruled, as a separate ground supporting summary judgment, that "defendants were prejudiced by not having been provided with timely notice of plaintiff's claim against Utah Title as required by the policies, and that said claim was, for that reason also, not covered by the policies." The Policy stated that as a condition precedent to recovery, notice of a claim or suit against Utah Title must be given to defendants "as soon as practicable" and that Utah Title must immediately forward to defendants "every demand, notice, summons or other process."

AOK first made a claim against Utah Title in 1979. However, defendants were not notified of AOK's lawsuit against Utah Title until June 1988, after eight years of litigation had concluded and a $400,000 judgment against Utah Title was in place. AOK claims that the failure to notify defendants for so long is not fatal to its claim because defendants were not prejudiced by the delay.

■ We need not reach this issue because we find that the trial court was correct in barring AOK's suit as a result of the failure to comply with the claims-made provision. However, if we did address this issue, we would agree with the trial court's decision on the matter. In *Busch Corp. v. State Farm Fire & Casualty Co.,*[24] the insured failed to notify its insurance companies of a claim against it, as the policies mandated, until five years had passed and a judgment was entered against the insured.[25] We held that the insured's failure to comply with the notice terms of the policies relieved the insurance companies from their obligations under those policies.[26] Our decision in *Busch* is applicable here and further supports the correctness of the trial court's order granting summary judgment in favor of defendants.

In *Busch,* we did not reach the issue of whether an insurer must show that it was prejudiced by the filing of an untimely claim in order to deny coverage.[27] We noted in dictum, however, that prejudice was shown in that case because of the five-year delay in providing notice and the existence of the insurance companies' unopposed affidavits professing prejudice.[28] Here, defendants filed a similar affidavit, outlining the prejudice suffered as a result of the approximately nine-year reporting delay. The affidavit notes that failure to report the claim until nearly a decade had passed and a $400,000 judgment was in place deprived defendants of the opportunity to participate in any way in the defense of the suit, a duty it would have had under the Policy if the Policy were applicable in this case. Based on these facts, the trial court was correct in concluding that prejudice existed as a matter of law.

---

21. 717 P.2d 670 (Utah 1985).

22. *Id.* at 686.

23. *Id.* at 672.

24. 743 P.2d 1217 (Utah 1987).

25. *Id.* at 1218.

26. *Id.* at 1218–19.

27. *Id.* at 1220 n. 6.

28. *Id.* at 1220.

We have reviewed AOK's remaining claims and find them to be without merit. The trial court's decision granting summary judgment to defendants is affirmed.

HOWE, A.C.J., and DURHAM, and ZIMMERMAN, JJ., concur.

STEWART, J., concurs in the result.