# United States Court of Appeals
## For the First Circuit

No. 22-1967

NAHANT PRESERVATION TRUST, INC., ET AL.,

Plaintiffs, Appellants,

v.

MOUNT VERNON FIRE INSURANCE COMPANY and UNITED STATES LIABILITY
INSURANCE GROUP,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, U.S. District Judge]

Before

Gelpí, Selya, and Montecalvo,
Circuit Judges.

John D. Frumer, with whom Law Office of John D. Frumer was on
brief, for appellants.
Lincoln A. Rose, with whom Scarlett M. Rajbanshi and Peabody
& Arnold LLP were on brief, for appellees.

August 16, 2023

**SELYA**, <u>Circuit Judge</u>. This appeal has its genesis in an effort by plaintiffs-appellants Nahant Preservation Trust, Inc., its directors, officers, trustees, committee members, and volunteers (collectively, Nahant) to secure insurance coverage with respect to defense costs and indemnification arising in connection with a state-court action brought by Northeastern University (Northeastern).[1] In that state-court action, Northeastern seeks a declaratory judgment (among other remedies) concerning its rights regarding the status of certain land owned by it. At the center of the dispute is Northeastern's plan to develop the land — a plan that Nahant asserts is prohibited by Article 97 of the Amendments to the Massachusetts Constitution.

From June 19, 2018 to June 19, 2022, Nahant carried non-profit management liability insurance through a succession of four continuous annual policies issued by defendant-appellee Mount Vernon Fire Insurance Company, a member of defendant-appellee United States Liability Insurance Group (collectively, USLI). Each of these policies included coverage for indemnity and defense costs, subject to certain conditions, in the event that a covered claim was made against Nahant. In industry parlance, the policies provided claims-made coverage. <u>See</u> <u>generally</u> <u>President & Fellows of Harvard Coll.</u> v. <u>Zurich Am. Ins. Co.</u>, ___ F.4th ___, ___ (1st

_____

[1] The Northeastern action has been consolidated with a cross-action brought by Nahant.

Cir. 2023) [No. 22-1938, slip op. at 7 n.1] (explaining difference between claims-made and occurrence-based coverages).

Under the policy terms, this meant that coverage was limited to claims first made against Nahant during a policy period, which was defined as the period from the "effective date" of each policy to the expiration date of that policy. Each policy required — as a condition precedent to coverage — that written notice of any claim for which coverage was sought be given to USLI "as soon as practicable," but in no event later than ninety days "after the expiration date" of the policy.[2]

Northeastern filed suit against Nahant in the state court on August 9, 2019. The second policy in the series (the 2019 Policy), which ran from June 19, 2019 to June 19, 2020, was then in effect. The suit came within the compass of that policy. But Nahant did not notify USLI of the Northeastern suit until July 27, 2021, when it wrote to USLI seeking coverage for defense costs. USLI refused to afford coverage, insisting that Nahant had not provided notice of the claim within the notification period specified in the 2019 Policy.

---

[2] The first of the four policies, which ran from June 19, 2018 to June 19, 2019, had a slightly different end-date for the notification requirement: it specified that written notice must be given no later than sixty days after the expiration of the policy. Nothing turns on this discrepancy here.

Nahant did not accept this rebuff quietly. Instead, it sued USLI in a Massachusetts state court, seeking a declaratory judgment regarding USLI's duty to defend, indemnify, and defray defense costs, along with specific performance and damages for breach of contract. Noting the diverse citizenship of the parties and the existence of a controversy exceeding the requisite minimum amount, USLI removed the action to the United States District Court for the District of Massachusetts. See 28 U.S.C. §§ 1332(a), 1441(a). USLI then moved to dismiss the action, see Fed. R. Civ. P. 12(b)(6), averring that Nahant's late notice forfeited any right to coverage.

Nahant opposed the motion. It asserted that the 2019 Policy, read in light of the series of policies, was at least ambiguous. This assertion derived primarily from an endorsement to the 2019 Policy (and the two subsequent policies), which amended the exclusion for coverage of prior or pending litigation (the Exclusion Amendment). The Exclusion Amendment stated that USLI would not be liable for either indemnification or defense costs in connection with claims arising from:

> Any litigation, demand, claim, arbitration, decree, judgment, proceeding, or investigation against any **Insured**, or any such action based upon the same or essentially the same facts, circumstances, matters, situations, transactions or events underlying or alleged therein which was pending on or prior to the effective date of this **Policy**;

> provided that, if this **Policy** is a renewal of a **Policy** previously issued by the **Company** in a continuous succession of **Policies** with no lapses in coverage, the effective date of this **Policy** will mean the effective date of the first **Policy** issued by the **Company** in such succession of **Policies**.

The Exclusion Amendment continued: "All other terms and conditions of this **Policy** remain unchanged." Nahant argued that the Exclusion Amendment should be read to change the meaning of "effective date" throughout the series of policies (except for the 2018 Policy) and to alter the definition of "policy period" such that the policy period for all four policies would be deemed to run from the inception date of the first policy (June 19, 2018) to the expiration date of the last policy (June 19, 2022).

USLI found this argument unconvincing and urged the district court to give the Exclusion Amendment a much narrower reading: in its view, the Exclusion Amendment excluded coverage for claims related to facts or matters pending before the policy's effective date, and the specific meaning of "effective date" within the Exclusion Amendment should be read to apply only to that exclusion. The Exclusion Amendment, USLI said, did not operate to revive coverage for claims that had been made, but not timely reported by Nahant to USLI, during a prior policy period.

The district court rejected Nahant's attempt to make a mountain out of a molehill, adopted USLI's plain-meaning construction of the Exclusion Amendment, and granted the motion to

dismiss. See Nahant Pres. Tr., Inc. v. Mount Vernon Fire Ins. Co., 2022 WL 17818589, at *10 (D. Mass. Nov. 7, 2022). This timely appeal followed.

We review the district court's entry of an order of dismissal pursuant to Rule 12(b)(6) de novo. See SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010) (en banc). In conducting that review, we accept all well-pleaded facts in the complaint as true and draw all reasonable inferences therefrom to the pleader's behoof. See Conformis, Inc. v. Aetna, Inc., 58 F.4th 517, 527 (1st Cir. 2023).

Insurance policies are not light reading, and their construction often can be challenging. Here, however, the Exclusion Amendment, read against the backdrop of the policies in their entirety, is straightforward. And as we shall explain, see text infra, the Exclusion Amendment's meaning — insofar as it concerns the matter at issue — is clear.

We need not write at length. We have said before — in the insurance context — that when a district court "correctly takes the measure of a case and authors a convincing decision, it rarely will serve any useful purpose for a reviewing court to wax longiloquent." Eaton v. Penn-Am. Ins. Co., 626 F.3d 113, 114 (1st Cir. 2010); see Seaco Ins. Co. v. Davis-Irish, 300 F.3d 84, 86 (1st Cir. 2002). Because this is such a case, we affirm the judgment below for substantially the reasons expressed by the

- 6 -

district court in its well-reasoned opinion, see Nahant Pres. Tr., Inc., 2022 WL 17818589, at *5-9, pausing only to add five comments.

**First:** Nahant bases its argument entirely on language found in the 2019 Policy's Exclusion Amendment, which by its terms "deleted and replaced" the prior or pending litigation exclusion. It is apparent from the policy language that the purpose of that exclusion was to preclude coverage for claims that were closely related to matters pending before the policy's effective date, as defined by the exclusion.

Massachusetts law supplies the substantive rules of decision in this diversity case. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-79 (1938). Under Massachusetts law, courts generally "should err on the side of the narrowest plausible interpretation of [an] exclusion." Performance Trans., Inc. v. Gen. Star Indem. Co., 983 F.3d 20, 25 (1st Cir. 2020). But Nahant — instead of hewing to the narrow purpose of the Exclusion Amendment — has turned this principle upside-down, disregarded that narrow purpose, and interpreted the Exclusion Amendment broadly to work a massive reformation of the entire series of policies. Nahant, in effect, wants us to interpret an exclusionary provision designed only to limit coverage as an after-the-fact mechanism for expanding coverage. Such a huge expansion of coverage would run at cross-purposes with the obvious objective of the Exclusion Amendment.

**Second:** Nahant's principal rejoinder is that — under Massachusetts law — ambiguities in an insurance policy must be construed in favor of the insured. See Certain Interested Underwriters at Lloyd's, London v. Stolberg, 680 F.3d 61, 66 (1st Cir. 2012) (applying Massachusetts law); Metro. Prop. & Cas. Ins. Co. v. Morrison, 951 N.E.2d 662, 671 (Mass. 2011). Although we have no quarrel with that tenet, it has no application here. Ambiguity in an insurance policy exists when "the policy language is susceptible to more than one rational interpretation." Valley Forge Ins. Co. v. Field, 670 F.3d 93, 97 (1st Cir. 2012) (quoting Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 4-5 (1st Cir. 2000)). In this instance, though, the only rational interpretation of the Exclusion Amendment is that proposed by USLI and adopted by the district court; Nahant's reading of the Exclusion Amendment is — as we already have pointed out — not a reasonable one. Consequently, there is no ambiguity.

**Third:** Nahant's reading of the Exclusion Amendment would do violence to the very language of that amendment. It is apodictic that an insurance policy (like any other contract) must be read as a whole and that every word and phrase "must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable." Metro. Life Ins. Co. v. Cotter, 984 N.E.2d 835, 844, 846 (Mass. 2013) (quoting Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London, 871 N.E.2d 418, 425 (Mass.

2007)); see Stolberg, 680 F.3d at 67. Nahant's reading flouts this abecedarian principle: it completely ignores the final sentence of the Exclusion Amendment, which instructs that "[a]ll other terms and conditions of this Policy remain unchanged." Nahant's interpretation reads the Exclusion Amendment to modify important provisions elsewhere in the policies (including the policy period and notice requirements) and, thus, flatly contravenes the Exclusion Amendment. By contrast, the reading proposed by USLI and accepted by the district court, see Nahant Pres. Tr., Inc., 2022 WL 17818589, at *6, gives appropriate meaning and effect to all parts of the Exclusion Amendment (including the last sentence). That reading, therefore, represents the preferred interpretation of the Exclusion Amendment under Massachusetts law. See Cotter, 984 N.E.2d at 844.

**Fourth**: Nahant's reading of the Exclusion Amendment is inconsistent with the core purpose of claims-made policies. Such policies aim "to minimize the time between the insured event and the payment." Harvard Coll., ___ F.4th at ___ [slip op. at 8] (quoting Chas. T. Main, Inc. v. Fireman's Fund Ins. Co., 551 N.E.2d 28, 30 (Mass. 1990)). For that reason, "notice provisions of claims-made policies — which require that notice of a claim be given by the end of the policy period or a defined period ending shortly thereafter — are of the essence of those policies." Id. at ___ [slip op. at 8]. Accordingly, the core purpose of a claims-

- 9 -

made policy would be thwarted if the policy period extended indeterminately. See Chas. T. Main, Inc., 551 N.E.2d at 30.

Yet, Nahant's reading subverts that core purpose by continually expanding the time between an insured event and the eventual payment with each new policy year. Such a continually expanding reading discourages prompt reporting and inevitably hinders accurate rate setting, thus frustrating the core purpose of a claims-made policy. See id. at 29.

**Fifth**: Last but not least, it is well-established in Massachusetts that late notice under a claims-made policy forfeits coverage, regardless of prejudice. See Tenovsky v. All. Syndicate, Inc., 677 N.E.2d 1144, 1145-46 (Mass. 1997); Chas. T. Main, Inc., 551 N.E.2d at 29-30. We have applied that doctrine in diversity cases on no fewer than four occasions. See Harvard Coll., ___ F.4th at ___ [slip op. at 10-11]; Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 49-51 (1st Cir. 2009); Nat'l Union Fire Ins. Co. v. Talcott, 931 F.2d 166-167-69 (1st Cir. 1991); J.I. Corp. v. Fed. Ins. Co., 920 F.2d 118, 120 (1st Cir. 1990); see also DiLuglio v. New England Ins. Co., 959 F.2d 355, 358 (1st Cir. 1992) (explaining Massachusetts rule while discussing Rhode Island law). That doctrine controls here. Cf. RTR Techs, Inc. v. Helming, 707 F.3d 84, 86 (1st Cir. 2013) (noting that "the law normally ministers to the vigilant").

We need go no further. For substantially the reasons expressed in the district court's opinion and embellished here, we accept USLI's plausible reading of the Exclusion Amendment, reject Nahant's implausible reading, and affirm the judgment below.

**Affirmed**.