**MGIC INDEMNITY CORP., and Continental Casualty Co., Plaintiffs-Appellees,**

v.

**CENTRAL BANK OF MONROE, LA., Defendant-Appellant.**

No. 87–4007.

United States Court of Appeals, Fifth Circuit.

March 7, 1988.

---

Thomas J. Walsh, Jr., Glen G. Reid, Jr., Wildman, Harrold, Allen, Dixon & McDonnell, Memphis, Tenn., for defendant-appellant.

William G. Kelly, Jr., Davenport, Files & Kelly, Monroe, La., Christy D. Jones, Lawrence J. Franck, Butler, Show, O'Mara, Stevens & Cannada, Jackson, Miss., for plaintiffs-appellees.

Before CLARK, Chief Judge, JOLLY and JONES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Central Bank of Monroe ("Central") appeals a jury verdict in favor of MGIC Indemnity Corp. ("MGIC"), the issuer of its directors and officers liability insurance policy ("D & O policy") and against Central's claim under that policy. After careful examination of the record, we conclude that the arguments at trial and on appeal are based on erroneous theories, but that the district court should have granted a directed verdict for MGIC based upon the undisputed facts. We therefore affirm.

## I

United Machinery Services, a small family-owned business, was a customer of Central Bank. United made and sold pump jacks, which are mechanical devices used in oil and gas wells.

Among the pump jack's component parts is a gear box. United arranged to purchase gear boxes over a long-term period from Philadelphia Gear Corporation. Philadelphia Gear required that United have its bank issue a letter-of-credit in favor of Philadelphia Gear. United asked Central Bank to provide such a document, and Central agreed. In February 1981, Central sent a letter-of-credit to Philadelphia Gear in the amount of $75,000, the approximate cost of a single truckload of gearboxes. Bank officer Henry Hinkle signed the letter-of-credit and handled the transaction. Philadelphia Gear sent a telex to Hinkle, advising of certain changes it required. It wanted to change the date from August 12, 1981, to April 31, 1982, to correspond to delivery dates. In addition, Philadelphia Gear asked that the following language be added:

> The letter-of-credit will automatically and instantaneously be amended to $75,000 after each drawing.

Apparently without realizing the effect of this language, Hinkle amended the letter-of-credit as asked, and sent it to Philadelphia Gear in late February. Shortly thereafter, Hinkle left the bank and went to work for United. No issue has been raised as to Hinkle's honesty in this transaction.

Sometime later, both Hinkle and people at Philadelphia Gear became concerned that the amendment to the letter-of-credit could be construed as granting an unlimited amount of credit. Other possible constructions of this amendment would have allowed credit to the extent of $18 million, which exceeded Central Bank's lending limit. In addition, United had a net worth of

less than $400,000 and was not a proper candidate for such a large credit risk.

The bank renegotiated the letter-of-credit with Philadelphia Gear, and finally agreed to a credit cap of $4.5 million, which matched United's outstanding orders with Philadelphia Gear. At this point, Philadelphia Gear had shipped only one gear box to United. Because of the oil boom in early 1981, Philadelphia Gear apparently had more orders for gear boxes than it could fill.

Late in 1981, because of the then failing oil market, United was no longer able to sell pump jacks, and was unable to pay Philadelphia Gear for the gear boxes which it continued to ship. Philadelphia Gear therefore submitted drafts on its letter-of-credit. Central Bank refused to pay the drafts. In February 1982, Philadelphia Gear sued Central Bank for payment in district court. Philadelphia Gear won a judgment, which was overturned on appeal, and finally the two parties settled the claim.

During all this, Central Bank held a D & O policy from MGIC, which provided, among other things, that MGIC "will pay ... on behalf of the Directors and Officers ... all loss which [they] shall become legally obligated to pay as a result of a 'wrongful act,' defined as an error, misstatement, act or omission, or neglect or breach of duty." This policy contained provisions requiring Central Bank to notify MGIC of claims or possible claims against Central's directors and officers. Two provisions are quoted by the parties as relating to Central's duties to inform MGIC of actual and possible claims:

6(a) If during the policy period the Bank or the Directors or Officers shall: (i) receive written or oral notice from any party that it is the intention of such party to hold the Directors and Officers, or any of them, responsible for a Wrongful Act; or (ii) become aware of any occurrence which may subsequently give rise to a claim being made against the Directors and Officers, or any of them for a Wrongful Act; and shall, during such period, give written notice thereof to the Insurer as soon as practicable and prior to the date of termination of the policy, then any claim which may subsequently be made against the Directors or Officers arising out of such Wrongful Act shall, for the purpose of this policy, be treated as a claim made during the policy year in which such notice was given.

6(b) The Bank or the Directors or Officers shall, as a condition precedent to their rights under this policy, give to the Insurer notice in writing as soon as practicable of any claims made and shall give the Insurer such information and cooperation as it may reasonably require.

Another portion of the policy provides:

6(d) The Bank and the Directors or Officers shall give the Insurer the right to associate itself in the defense and settlement of any claim that appears reasonably likely to involve the Insurer.

On June 25, 1982, while Central Bank's appeal of Philadelphia Gear's judgment was pending, and before the bank had made any claim against Hinkle, Central sent a notice letter to MGIC, advising that Central had "become aware of a series of occurrences ... which may in the future result in a claim being made under the aforesaid policy because of certain errors and omissions of one Henry Hinkle." Central then invited MGIC to participate in settlement negotiations with Philadelphia Gear, which eventually led to the settlement noted above.

MGIC then filed this suit for declaratory judgment as to its liability for Central's loss.

## II

MGIC obtained a jury verdict that it was not liable for Central's losses. This verdict was based on MGIC's "Notice and Prejudice" claim. In response to special interrogatories, the jury found that Hinkle had committed a wrongful act which caused the loss for which he would be liable to Central, but that MGIC had not been given proper notice and was prejudiced thereby. MGIC had contended that Central should have notified them as soon as it realized

Hinkle had erroneously approved the possibly unlimited letter-of-credit, before it renegotiated the $4.5 million cap with Philadelphia Gear. MGIC said it would have advised Central that the unlimited letter-of-credit was not valid and would have suggested more prudent alternate solutions than the one Central took. The jury apparently accepted this argument and upon its verdict judgment was entered accordingly for MGIC. Central filed a motion for a new trial, raising issues concerning notice and prejudice. The motion was denied. Central then filed its notice of appeal in this court.

On appeal, Central argues that: (1) the trial court erred in reading policy section 6(b) to the jury because only 6(a) was relevant, and 6(b) implied that notice was a "condition precedent" to recovery; (2) that the trial court erred by failing to tell the jury that MGIC had the burden of proof on the issue of prejudice; (3) that the trial court erred by instructing the jury that all three parties must consent to a modification of a letter-of-credit for the modification to become valid; (4) that there was insufficient evidence to show that MGIC had been prejudiced by Central's failure to give notice; and (5) that the trial court erred in allowing an expert witness to testify regarding the "customs and practices of the banking industry" because his testimony allowed him, rather than the court, to instruct the jury on the law of letters-of-credit.

### III

### A.

The way we see this case is that it was argued by both sides on erroneous theories, and much of the debate, upon close examination, turns out to be irrelevant.[1] First, policy provision 6(a) is not applicable at all. A careful reading of that provision shows that it was meant to allow the insured to extend the period of coverage under this policy beyond the policy period by timely reporting any occurrences that might give

rise to a future claim after the term ended. If Central reported possible future claims in compliance with this provision, then if such a claim was made after the end of the policy term, it would still be covered. This provision is included in the policy to mitigate the possible harshness of a "claims made" policy, which, it is conceded, is the type of policy here. Provision 6(a) does not *require* notice from the insured at all. It simply warns Central that, in order to extend the policy term for likely future claims, it must report these potential claims during the policy term. Therefore, since there is no contention that the subject claim was made outside the policy period, this provision has nothing to do with the dispute before us, and neither the district court nor the jury should have given it consideration.

■ This error is harmless, however, since it is clear that Central did not comply with the requirements of provision 6(b), which requirements were a condition precedent to recovery under the policy. For clarity's sake, we will repeat the wording of this provision here:

6(b) The Bank or the Directors or Officers shall, as a condition precedent to their rights under this policy, give to the Insurer notice in writing as soon as practicable of any claims made and shall give the Insurer such information and cooperation as it may reasonably require.

The first question about this provision relates to the term "condition precedent." Much of the debate between Central and MGIC at both the trial and appellate level concerns whether this language negates MGIC's obligation to demonstrate prejudice resulting from lack of notice. We hold that the language stating that compliance with this provision is a condition precedent to recovery under the policy means exactly what it says, and that if Central failed to comply with this provision by not giving MGIC timely notice of the claim made, then the claim will not be covered under the

1. This observation is not a reflection on the lawyers in this case since they may have had their own strategic reasons for trying and arguing the case the way they did; for example, some of the law involved was not fully certain.

policy, regardless of whether MGIC can demonstrate prejudice.

### B.

In arriving at this conclusion, we have been guided, as we must be in this diversity case, by Louisiana law. In *Menard v. Citizens Ins. Co. of New Jersey,* 184 So.2d 85 (La.Ct.App.1966), the court considered the provision of a policy insuring a horse that required the owner to give notice to the insurer of a sickness or injury to the animal, and stated that otherwise, "the Company shall not be liable for any loss where the Insured has failed to comply with the conditions of this section." *Id.* at 87. The court held that this provision required notice if the insured was to recover:

> The notice provision ... is a material condition of the policy and we do not consider it to be unreasonable. Therefore, omitting to give the proper notice will result in a failure of recovery if the death of the animal is caused by the sickness or injury of which notice was not given.

*Id.* (cites to 45 C.J.S. *Insurance* § 666 p. 607). Two other Louisiana cases explain that when the policy requires as a condition precedent that the insured forward all suit papers filed against it to the insurer, failure to comply with this condition will result in a denial of recovery. *Payton v. St. John,* 188 So.2d 647 (La.Ct.App.1966); *Hallman v. Marquette Casualty Co.,* 149 So.2d 131 (La.Ct.App.1963). Although these cases deal with notice of all process papers served on the insured, they also discuss the effect. of "condition precedent" language:

> The courts may not make a contract for the parties. Their functions and duties consist simply in interpreting and enforcing the agreement as actually made. It

is self-evident that a failure to restrict the rights of an injured person to the terms and conditions of the insurance contract would expose the insurer to liability far and beyond the scope of the contract.

One of the terms of the contract herein is that as a condition precedent to an action against the insurer, the insured shall have fully complied with all the terms of the policy, one of which is that he shall immediately forward to the company every demand, notice, summons, or other process received by him or his representative. To allow recovery in the absence of compliance of these provisions of the contract would be unreasonable and inequitable, and would establish a dangerous precedent, inviting obvious instances of abuse. Thus, we conclude that the defendant, not having been furnished with the citation or pleadings served upon the assured, is under no obligation to pay a judgment rendered against her.

*Hallman,* 149 So.2d at 135–36; *Payton* 188 So.2d at 652. Thus, we find that Louisiana law enforces provisions of insurance contracts which require notice as a condition precedent without also requiring the insurer to make a particular showing of prejudice. Central argues, however, that since Louisiana has not clearly spoken in a broad sense on the question of necessity of prejudice, the holdings of *Hallman* and *Payton* should be limited to the situations dealt with in those cases, that is, the failure to notify the insurer of the receipt of process and suit papers. Nevertheless, these cases contain general language about the effect of a condition precedent which we find applicable to the condition in the contract before us.[2]

---

2. The Louisiana court in *Hallman* also held that the insurer had been prejudiced (even though it did not need to show particular prejudice) since it was not notified before final judgment in the suit:

> [I]t would be difficult to conceive of greater prejudice, and of a confiscatory result being reached, than a demand for payment of a default judgment of which a defendant is totally ignorant, and which, through the failure

of the assured to comply with the terms of the contract and forward the process and pleadings to the insurer, *it has been deprived of its right to defend the action.*

*Hallman,* 149 So.2d at 135 (emphasis added). Although in our case Central defended the action brought by Philadelphia Gear rather than acquiescing to a default judgment, the court in *Hallman* found prejudice simply in the fact that the insurer lost the *opportunity* to defend the

We think that these cases provide an established structure to support the enforcement of a provision requiring notice as a condition precedent to recovery. At the same time, however, we recognize that some more recent cases have required an insurance company to demonstrate prejudice resulting from lack of notice. *Barnes v. Lumbermen's Mutual Cas. Co.*, 308 So. 2d 326 (La.Ct.App.1975); *Heimbaugh v. Federal Ins. Co.*, 281 So.2d 839 (La.Ct.App. 1973), *appeals denied*, 283 So.2d 771, 772 (La.1973). These cases do reflect that Louisiana is on the minority side of the issue whether an insurer must show prejudice resulting from untimely notice, even though the policy requires the insured to give timely notice of a claim. We find these cases distinguishable from ours for two reasons, however. First, none of these cases deals with a policy provision that expressly includes the term "condition precedent." As comment points out:

> Regarding the nature and effect of the clause, a distinction has been made between policies which expressly make compliance with the clause a condition precedent to the liability of the insurer under the policy, and those which omit such an express statement. Wherever the liability policy makes the insured's failure to give timely notice expressly the ground of forfeiture, or compliance therewith a condition precedent to the insurer's liability, no recovery can be had where timely notice has not been given. Where, however, the indemnity policy does not contain such an express provision, the effect of the insured's noncompliance with the policy requirement as to notice and forwarding of suit papers is doubtful.

18 A.L.R.2d 443, ¶ 5. As to the latter doubtful question, Louisiana requires the insurer to show prejudice when the policy only requires notice. Louisiana cases involving "condition precedent" or similar language, however, support the proposition that no recovery can be claimed where timely notice has not been given. There does not appear to be dispute on this question among the various states. 18 A.L. R.2d 443, ¶ 5.

Second, those cases which have required a showing of prejudice are based in equity, and the courts have taken special consideration of the fact that the policy holders were consumers unlikely to be conversant with all the fine print of their policies. The courts found that strict adherence to the terms of the notice provision would result too harshly against unsophisticated consumers and so have required the insurance companies, in order to bar recovery under the policies, to demonstrate that prejudice had resulted from the lack of notice. This equitable rationale does not apply nearly so forcefully where both the insured and the insurer are sophisticated businesses, which are expected to be conversant with the terms of their contracts. The Louisiana Supreme Court has not specifically resolved this issue, but we think it is unlikely that in this case it would find the equities so compelling that it would disregard the express language of the insurance contract, ignore the condition precedent notice requirement, and in effect rewrite the contract to expand coverage for one of the parties.

## C.

Having decided that Central had to comply with provision 6(b) in order to recover under the policy, we next turn to whether Central violated this provision. Central's obligation was to give MGIC "notice in writing as soon as practicable of any claims made...." The parties have argued extensively over when, for the purposes of this policy, a "claim" was "made" against the insured so as to require that timely notice be given to MGIC. MGIC argues that Central should have notified it as soon as it

---

case and cross-examine the witnesses. The court did not address the likelihood of success on the merits. Therefore we think *Hallman* is strong support for the proposition that MGIC was prejudiced as a matter of law when Central failed to notify it of the suit until after final judgment. We need not decide the case before us on that basis, however, since we hold that the express contractual provision requiring notice as a condition precedent should be given its full effect.

learned of the mistake Henry Hinkle had made in adding the unlimited credit amendment to the letter-of-credit. Even MGIC, however, calls this notice of a "potential claim." Provision 6(b) does not require as a condition precedent to recovery that Central notify MGIC of "potential claims." It requires Central to notify MGIC of "claims made." Central, in turn, argues that it was not required to notify MGIC until it decided to make a claim under the D & O policy against its officer, Hinkle. Central argues that it notified MGIC as soon as it decided to make this "claim," that is, after judgment had been rendered against it because of Hinkle's error, and that it therefore complied with the policy provision of timely notice.

■ To answer this question it is helpful to look at the nature of the D & O policy. A bank will insure its directors and officers for various reasons. Generally, in order to attract people to work as directors and officers, the bank must assure them they will not suffer personal liability. More fundamentally, however, the bank insures itself. Virtually any act that could subject its directors or officers to liability will also subject a bank to liability.[3] And a bank is more likely to end up paying than the sometimes judgment-proof directors and officers. Thus, although the given set of facts will determine on a case-by-case basis when a "claim" is "made" for the purposes of a given D & O policy, a claim is indisputably made by an outside party filing suit on a demand, resulting from an act of the officer or director, which demand the bank has denied. It is at this point that the bank certainly knows it is the subject of a claim based upon an alleged misdeed of one of its officers or directors, and we believe that it is at this time, at the latest, that the "claim" that activates the notice provision of the insurance contract is "made." This is so regardless of whether the party making the claim names the director or officer as a party, as long as it is clear to the bank that the claim is based upon an action by a director or officer that falls within the terms of the insurance contract.

Central argues essentially that if the outside party does not name a director or officer but sues only the bank directly, no claim is made until the bank decides to make demand on its own director or officer for indemnity by filing an insurance "claim" with MGIC. We find that to call this the sort of "claim" for which the policy requires notice is to render provision 6(b) nonsensical. Of course, Central must notify MGIC that it is making a claim against the policy in order for MGIC to pay the claim. If that were all provision 6(b) meant, there would be no reason to include it in the policy. It is plain to us that the "claim" referred to in section 6(b) means a claim based on the alleged misdeeds of one of its officers or directors, a claim which was *made* in this case long before judgment was entered against Central.

■ Thus in this case we see that a "claim" was indisputably "made," at the latest, when Philadelphia Gear sued Central Bank for payment under the letter-of-credit. Timely notice was then due MGIC. It was at least at that point that Central became aware of an actual claim being made against it resulting from an error by one of its officers or directors. It was at this point that MGIC would have had the opportunity to participate in Central's defense against Philadelphia Gear's claim and thus attempt to protect itself. Thus, when Central defended against Philadelphia Gear's claim without notifying MGIC, it violated the condition precedent of timely notice to MGIC, and therefore its untimely claim was not within the policy's coverage.

### D.

Central argues in its brief that MGIC never raised, either at trial or on appeal, the argument that Central should have notified it once Philadelphia Gear had filed suit. Rather, all MGIC's arguments go to

---

3. Our observations are not intended to cover every purpose of a D & O policy. For instance, assuming a D & O policy protected the Bank against embezzlement by one of its officers or directors, it is obvious that the "claim made" against the policy would not come from an outside party.

support the theory that Central should have notified it as soon as it learned of Henry Hinkle's mistake. It is true that MGIC did not make these arguments. MGIC however, did move for a directed verdict on the basis that timely notice had not been given and that it need not show prejudice since the failure to give timely notice established prejudice as a matter of law. The only notice MGIC ever received was after judgment had been entered in the Philadelphia Gear suit. Under our opinion today, it is clear that this notice was not timely. The district court, therefore, under our holding today, should have directed a verdict for MGIC because timely notice was a condition precedent to recovery. There is thus no need to remand this case for any further action by the district court.[4]

## IV

Because the insurance policy required Central, as a condition precedent to recovery, to report "claims made" to MGIC promptly, and because it did not report Philadelphia Gear's suit against it until after the trial, Central lost its rights under the policy. The judgment of the district court is therefore

AFFIRMED.

---

4. Because of the way we have disposed of this case, it is unnecessary to examine most of the issues presented by the parties. Since the trial court should have decided this case on directed verdict, its possible errors in reading various policy provisions to the jury, in failing to charge the jury about the burden of proof, and in instructing the jury that all three parties to a letter-of-credit transaction must consent to a modification in order to make it valid are irrelevant. In addition, since we have found that MGIC did not need to prove prejudice when notice was required as a condition precedent in the policy, the trial court's charge to the jury on the burden of proof of prejudice, and whether there was sufficient evidence to support an argument of prejudice, are also irrelevant. Finally, we need not decide whether the trial court erred in allowing an expert witness to testify regarding the "customs and practices of the banking industry" because anything presented or not presented to the jury is now irrelevant.