United States Court of Appeals,

Fifth Circuit.

No. 93-5563.

JOSLYN MANUFACTURING COMPANY, Plaintiff-Appellant,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Defendant-Appellee.

Sept. 2, 1994.

Appeal from the United States District Court for the Western District of Louisiana.

Before REYNALDO G. GARZA, SMITH and PARKER, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Joslyn Manufacturing Company ("Joslyn") filed this action for declaratory judgment seeking to enforce an insurance policy with Liberty Mutual Insurance Company ("Liberty"). The policy would obligate Liberty to defend and indemnify Joslyn against Louisiana Department of Environmental Quality ("DEQ") Compliance Orders directing Joslyn to investigate and remediate environmental damage at Joslyn's former wood treatment plant in Bossier City, Louisiana. Joslyn seeks reimbursement for its past defense costs, indemnity of its past clean-up costs, and a declaration that Liberty must pay Joslyn's future defense and clean-up costs. For the following reasons, we affirm the district court.

FACTS

Joslyn purchased the Lincoln Creosoting Plant in Bossier City on July 24, 1950, where it treated wood with creosote. It operated the facility until 1969 when it sold the plant to Koppers, Inc. on December 1, 1969. Joslyn has been a Liberty Mutual insured since

1945. From 1962 through 1969 the creosote plant was an insured location under Joslyn's policies with Liberty. Neither party can locate any of the pre-1962 liability policies between Joslyn and Liberty.

In 1985, the DEQ began studying the old Lincoln Creosoting Plant site. On October 14, 1985, a report was issued to the DEQ that found the soil at the site, as well as an extremely high probability of the groundwater, to be contaminated. On December 6, 1985, the DEQ sent Joslyn an information request concerning the site, and Joslyn responded on February 7, 1986. On August 2, 1986, the DEQ issued a compliance order finding that Joslyn and twelve other parties were subject to liability for clean-up and remedial costs, and ordered the parties to submit an approved clean-up plan for the site. This order was stayed because of requests for a hearing. The August 2, 1986 DEQ Compliance Order was amended on December 17, 1987.

Joslyn first advised Liberty of the DEQ's actions on May 19, 1987, and on June 23, 1987. Liberty denied coverage by letter of March 30, 1989. This suit seeking declaratory judgment ensued.

On July 8, 1993, United States District Judge Tom Stagg issued a Memorandum Ruling, 836 F.Supp. 1273. In it the court found that Liberty had no duty to indemnify Joslyn because Joslyn failed to comply with the "immediate notice" condition precedent by waiting nine months before giving notice of an August 2, 1986 DEQ Compliance Order asking Joslyn to submit a letter to the DEQ stating whether it would voluntarily investigate and remediate the

2

contamination at the property.  The court further held that Liberty had no duty to defend Joslyn because the Compliance Order directing Joslyn to investigate and clean up the property was not a "suit." Finally, the court struck the affidavit of Philip Gehrke, Joslyn's Risk Manager from 1947 to 1983, regarding the missing insurance policies for 1950 to 1962.  Joslyn has timely appealed.

DISCUSSION

This case is subject to a *de novo* review by this court. *Fritiofson v. Alexander,* 772 F.2d 1225, 1239 (5th Cir.1985).  The pertinent portions of the insurance contract provided:

> As respects the insurance afforded by the other terms of this policy the company shall:
>
> (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent.

The "Conditions" section of the Liberty policies stated:

> NOTICE OF CLAIM OR SUIT  If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice summons or other process received by him or his representative.
>
> ACTION AGAINST COMPANY  No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.[1]

Appellant Joslyn argues that the trial court erred in ruling

---

[1]This language is from a 1962 policy issued to Joslyn. Liberty Mutual has stated that the language used in the 1962 policy is similar to the language in the 1963-1969 policies, unless specifically noted.  *See* Liberty Mutual's post-trial brief at p. 6, fn. 2.  Joslyn has not contested this statement.

that they forfeited their insurance coverage because they failed to immediately notify Liberty of the August 2, 1986 DEQ Compliance Order, as was required by the insurance contract. Joslyn asserts that the August 2, 1986 DEQ order was not a claim or suit which triggers their duty to provide immediate notice to Liberty.[2] Appellant states that the DEQ Compliance Order asked it only to submit a letter stating whether it would voluntarily address the contamination. Joslyn and the other respondents declined and exercised their right to request a hearing. On May 19, 1987, Joslyn gave notice of the potential "future claim" when it was unclear what the DEQ would do. They then gave notice again on June 23, 1987, when it expected the DEQ to enter an amended Compliance Order directing the work to begin. When the DEQ served Joslyn with the amended order on December 17, 1987, Joslyn promptly sent it to Liberty on December 31, 1987. Therefore, Joslyn contends that it was only this amended letter that triggered their duty to notify Liberty, of which Joslyn gave timely notice, and that the district court erred in finding that the notice was late. We disagree.

The August 2, 1986 Compliance Order stated that Joslyn was subject to liability for clean-up and remedial costs, and ordered

---

[2]The district court notes the incongruent position advanced in the early stages of the trial, where Joslyn admitted that the August 2, 1986 order was a claim when attempting to engage Liberty's duty to defend (as well as reimburse any expenses already incurred). *See* Memorandum Ruling p. 7 fn. 2. Joslyn has apparently restructured its argument to allege that the August 2, 1986 DEQ Order was not a claim or suit which would trigger the duty to defend, and asserts that no claim or suit occurred until the Amended Compliance Order of December 17, 1987, of which Liberty was immediately notified.

it to submit an approved clean-up plan for the site.  The August 2, 1986 Compliance order is substantially equivalent to the Amended Compliance Order dated December 17, 1987, which Joslyn agrees is a claim.  This court concludes that this order was, at least, a claim which triggers Joslyn's contractual obligation to provide Liberty with immediate notice thereof as an express condition precedent to coverage.  Joslyn waited nine months before providing Liberty with the requisite notice, thereby committing a material breach of a condition precedent to coverage under the policy.  We next address the consequences of this late notice on the rights and liabilities of the parties to the contract.

Joslyn suggests that, even if they were late in providing Liberty with notice, Louisiana law interprets this clause to require "reasonable" notice to allow the insurer to adequately prepare a defense.  Joslyn claims that they were reasonable in their conduct.  Furthermore, Joslyn asserts that Liberty suffered no prejudice from any delay, and therefore should not be relieved from extending coverage to Joslyn.  Appellant claims that Liberty had a full opportunity to participate in Joslyn's defense and to protect itself, but chose to do nothing and let Joslyn bear the costs of the defense.[3]

In holding that prejudice was not a factor to consider in policies where notice was a condition precedent to coverage, the

---

[3]Moreover, Joslyn points out, Liberty never claimed prejudice in its reasons for claim denial, and should be barred under waiver principles from raising this defense on appeal. Liberty Mutual did not waive this defense, as it properly raised it in its answer.

district court relied on three relatively recent Fifth Circuit opinions: *Peavey Co. v. Zurich Insurance Company,* 971 F.2d 1168 (5th Cir.1992); *Auster Oil & Gas, Inc. v. Stream,* 891 F.2d 570 (5th Cir.1990); and *MGIC Indemn. Corp. v. Central Bank of Monroe, La.,* 838 F.2d 1382 (5th Cir.1988). "The rule in Louisiana is that where the requirement of timely notice is not an express condition precedent, the insurer must demonstrate that it was sufficiently prejudiced by the insured's late notice." *Peavey,* 971 F.2d at 1173. But where prompt notice of a covered occurrence is a "condition precedent" to recovery under an insurance policy, and the insured fails to give such notice, the claim is no longer covered by the policy, regardless of whether the insurer can demonstrate prejudice. *MGIC,* 838 F.2d at 1385-87. In the present case, timely notice was an express condition precedent to coverage. In *MGIC,* we held that the words "condition precedent" mean exactly what they say, and failure to comply with the provision precludes coverage. *Id.* at 1385.

Notably, this court's decision in *MGIC* neglected to discuss a Louisiana Supreme Court opinion disposing of a substantially similar issue. The Louisiana Supreme Court has rejected the view that a non-prejudicial delay in notice breaches a "condition precedent" on similar facts to those presented here. In *Jackson v. State Farm Mut. Auto. Ins. Co.,* 211 La. 19, 29 So.2d 177 (1946), the court reversed an intermediate appellate court decision which relieved an insurer of its obligations under a "condition precedent" analysis even though the insurer received notice soon

6

enough to defend the claim. The Louisiana Supreme Court held that all the facts and circumstances must be considered in "balancing the equities" in late notice cases, including "what prejudice to the insurance company's defense has been caused by the delay...." *Id.,* 29 So.2d at 179.

In requiring the parties to live by the express terms of the contract they freely entered, the *MGIC* court distinguished those cases which have required a showing of prejudice to balance the equities where the policy holders were consumers unlikely to be conversant with all the fine print of their policies. *MGIC,* 838 F.2d at 1387. This court then reasoned that "strict adherence to the terms of the notice provision would result too harshly against unsophisticated consumers and so have required the insurance companies, in order to bar recovery under the policies, to demonstrate that prejudice had resulted from the lack of notice." *Id.* The equitable rationale does not apply so strongly where both parties are sophisticated businesses, which are expected to be conversant with the terms of their contracts. *Id.*

Our factual scenario requires us to distinguish *Jackson* and follow the precedent laid down in *MGIC.* Unlike the instant case, the insured in *Jackson* had reasonable grounds to believe that no claim would be made until the demand was made upon him. *Jackson,* 29 So.2d at 177, 179. Additionally, the insured was only eighty-two days tardy in providing the necessary notice, *id.* at 177, as opposed to Joslyn's nine month delay. And finally, the court in *Jackson* was painstakingly trying to protect the average

citizen who purchases a public liability policy without becoming familiar with its detailed provisions, but simply puts it away against the day when a claim may be made against him. *Id.* at 178. Moreover, the claim in *Jackson* was brought by an injured third party against the insurance company. This court adopted the same prejudice inquiry for claims brought pursuant to the Louisiana Direct Action Statute. *See Auster,* 891 F.2d at 578 (holding non-prejudicial delay in notice could not bar recovery by third party claimant under statute). Such is not the case before us. Joslyn is not a third party claimant, but a sophisticated business entity. Consequently, these equitable exceptions do not weigh in their favor.

In *MGIC* this court held that the insurer is not compelled to prove prejudice where timely notice is a condition precedent to coverage for a sophisticated business entity:

> Much of the debate between [the parties] at both the trial and appellate level concerns whether this language negates MGIC's obligation to demonstrate prejudice resulting from lack of notice. We hold that the language stating that compliance with this provision is a condition precedent to recovery under the policy means exactly what it says, and that if Central failed to comply with this provision by not giving MGIC timely notice of the claim made, then the claim will not be covered under the policy, regardless of whether MGIC can demonstrate prejudice.

*MGIC,* 838 F.2d at 1386. It is well established under Louisiana law that:

> The courts may not make a contract for the parties. Their functions and duties consist simply in interpreting and enforcing the agreement as actually made. It is self-evident that a failure to restrict the rights of an injured person to the terms and conditions of the insurance contract would expose the insurer to liability far and beyond the scope of the contract.

8

> ... To allow recovery in the absence of compliance of these provisions of the contract would be unreasonable and inequitable, and would establish a dangerous precedent, inviting obvious instances of abuse.

*Id.* (citing *Hallman v. Marquette Cas. Co.,* 149 So.2d 131, 135-36 (La.Ct.App.1963)). Under these facts, a nine month delay constitutes a material breach of the condition precedent of immediate notice. *MGIC* instructs us that prejudice need not enter the calculation.

Appellant asks us to limit *MGIC* to the facts of that case, where the notice came after trial had already concluded causing obvious prejudice to the insurance company. However, this court enunciated its broad holding in *MGIC* even after recognizing the opportunity to limit the decision to the narrow facts before it. "... *Hallman* is strong support for the proposition that MGIC was prejudiced as a matter of law when Central failed to notify it of the suit until after final judgment. We need not decide the case before us on that basis, however, since we hold that the express contractual provision requiring notice as a condition precedent should be given its full effect." *MGIC,* 838 F.2d at 1386 n. 2. We are bound by our precedent in *MGIC.*

Appellant alleges error committed in the lower court by holding that the DEQ Compliance Order was not a "suit" which Liberty was obligated to defend under its policies. Further, appellant claims that by excluding portions of the affidavit of Joslyn's former Risk Manager and in concluding that Joslyn failed to meet its burden in proving the terms and conditions of the missing liability policies covering Joslyn from 1952 to 1962, the

9

district court committed reversible error. However, we need not reach these subsequent issues since Joslyn did not fully comply with the express terms of the conditions precedent in the contract.

CONCLUSION

In this case we find that a claim was made, at the latest, when Joslyn received the August 2, 1986 DEQ Compliance Order. Timely notice was then due Liberty. Thus, when Joslyn waited nine months to notify Liberty, it violated the condition precedent of timely notice, and therefore its untimely claim is not within the policy's coverage. We will not disregard the express language of the insurance contract, and ignore the condition precedent notice requirement to effectively rewrite the contract to expand coverage for Joslyn. The appellant's motion to certify this question to the Louisiana Supreme Court is DENIED, and the judgment of the district court is

AFFIRMED.