**AMERICAN SAFETY & RISK SERVICES, INC., et al,**

v.

**LEGION INDEMNITY COMPANY, et al.**

**No. Civ.A. 00–2950.**

United States District Court, E.D. Louisiana.

July 13, 2001.

Edward John Lilly, Jonathan M. Herman, Crull, Castaing, Lilly & Herman, New Orleans, LA, for plaintiffs.

George Davidson Fagan, Leake, Andersson & Mann, LLP, New Orleans, LA, for Legion Indemnity Company.

John William Waters, Jr., Bienvenu, Foster, Ryan & O'Bannon, John A. Stewart, Jr., Hulse & Wanek, New Orleans, LA, for Continental Casualty Company.

John A. Stewart, Jr., Hulse & Wanek, New Orleans, LA, for Transportation Insurance Company.

Graham N. Smith, Timothy John McNamara, Onebane, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, LA, for Fireman's Fund Insurance Company of Ohio.

Thomas E. Schwab, Barkley & Thompson, LC, New Orleans, LA, for Palmer & Cay of Georgia, Inc.

BARBIER, District Judge.

Before the Court are two motions: plaintiffs' **Motion for Partial Summary Judgment** on Transportation Insurance Company's ("Transportation's") duty to defend (Rec.Doc. 21); and defendants Transportation and Continental Casualty's (Continental's) **Motion for Summary Judgment** on coverage (Rec.Doc. 25). Both motions are opposed.[1] The motions were set for hearing with oral argument on June 15, 2001, after which the Court took the matter under advisement. Now,

---

1. Transportation opposes plaintiffs' motion; plaintiffs and defendant Legion Indemnity Company oppose Transportation and Continental's motion.

having considered the record, the memoranda and argument of counsel, and applicable law, the Court finds that plaintiffs' motion should be granted and defendants' motion should be denied, for the reasons which follow.

## BACKGROUND

This case arises out of state court litigation currently pending in the Eighth Judicial District for the Parish of Winn, captioned *Louisiana Association of Timbermen, et al v. Reliance Insurance Company, et al*, docket number 35,597–99 ("Winn Parish litigation"). In the Winn Parish litigation, the Louisiana Association of Timbermen—Self Insurance Fund filed suit for damages and injunctive relief against American Safety and Risk Services ("ASRS"), Dennis P. Neyland and Charles V. Neyland, and Reliance Insurance Company, alleging, *inter alia*, that beginning sometime in the summer of 1998, the Neylands, who were officers of an entity called National Safety Consultants ("NSC") with which the Fund had contracted for the provision of administrative claims services, misappropriated confidential and proprietary information maintained by NSC. Winn Petition, ¶ 13. The petition alleges that the defendants then used this information for the benefit of Reliance Insurance Company, and caused members of the Fund to resign, resulting in the loss of premiums, safety fees, and membership fees. Winn Petition, ¶ 14. Among the specific allegations are the following:

Dennis P. Neyland and Charles V. Neyland, as officers and directors of ASRS, systematically made use of confidential information maintained by NSC for the Fund to their benefit and to the detriment of the Fund, for the purpose of diverting customers from the Fund to Reliance; said acts include:

1.) Causing correspondence and advertisements to be issued directly to Fund members by direct mail and facsimile by use of the Fund's confidential renewal list; [and]

2.) Dissemination of information indicating that the Fund was no longer in business or was no longer writing worker's compensation memberships.

Winn Petition, ¶ 17.

The Winn Parish defendants (plaintiffs herein) argue that the claims against them allege an "advertising injury" as defined in the Comprehensive General Liability policy written by Transportation, defendant in the instant federal litigation, and thus that Transportation has a duty under applicable Louisiana law to defend them in the Winn Parish litigation. Because Transportation has failed to tender a defense, plaintiffs have filed the instant motion for partial summary judgment on the duty to defend. Defendants Transportation and Continental subsequently filed a motion for summary judgment on the issue of coverage.

## DISCUSSION

### I. Duty to Defend

An insurer's duty to defend its insured is generally broader than the duty to indemnify. *Hardy v. Hartford Ins. Co.*, 236 F.3d 287, 290 (5th Cir.2001), citing *Yount v. Maisano*, 627 So.2d 148, 153 (La. 1993). Whether a duty to defend exists is determined by an examination of the allegations of the injured plaintiff's petition; the insurer is obligated to tender a defense unless the petition unambiguously excludes coverage. *Id.* "Assuming all the allegations of the petition are true, the insurer must defend, regardless of the outcome of the suit, if there would be both (1) coverage under the policy and (2) liability to the plaintiff." *Id.* The allegations of the petition are liberally construed in determining

whether the claim falls within the scope of the insurer's duty to defend. *Id.* As well, "ambiguous provisions in insurance policies are strictly construed against the insurer in favor of coverage to the insured." *Id.*, citing *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 764 (La.1994).

In their original motion, plaintiffs argued that Transportation's duty to defend was triggered by the fact that the Winn Parish petition contains allegations that fall within the ambit of the advertising injury, personal injury, and property damage provisions of the Transportation policy. However, at oral argument, the Court stated on the record that based on its review of the policy and the pleadings, the only potentially successful basis for requiring Transportation to defend was the provision concerning advertising injury. Accordingly, the issue before the Court is whether the four corners of the Winn Parish petition contain allegations against the Winn Parish defendants (plaintiffs herein) that suggest the possibility of coverage under the advertising injury provision of the Transportation policy.

■ The section of the Policy labeled "Coverages" provides in part that "We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'advertising injury' to which this insurance applies." Policy, ¶ A(1)(a). Further, this insurance applies . . . to . . . " 'Advertising injury' caused by an offense committed in the course of advertising your goods, products or services.' " *Id.* sub-¶ (ii)(a).

"Advertising injury" is defined in the policy as an "injury arising out of one or more of the following offenses: (a) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services. . . ." Policy, ¶ F(1)(a).

The policy also contains various exclusions. Of relevance to our inquiry is the following: "This insurance does not apply to: (p) 'Personal injury' or 'advertising injury': (a) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." Policy, ¶ B(1)(p)(a).

In this case, the Winn Parish plaintiffs have alleged, *inter alia*, that the Winn Parish defendants "disseminat[ed] . . . information indicating that the Fund was no longer in business or was no longer writing worker's compensation memberships." This allegation appears to fall within the Policy definition of "advertising injury," because the information allegedly broadcast by the Winn Parish defendants may be construed as "oral or written publication of material that . . . disparages a[n] . . . organization's goods, products or services."

Transportation has suggested that the allegation that the Winn Parish defendants falsely told others that the Fund was no longer in business and no longer writing certain policies is a disparagement against the Fund, rather than against its "goods, products or services," and thus does not fall within the policy. The Court is not persuaded by Transportation's hair-splitting on this point. An insurance company's product is its policies, and the suggestion that an insurance company no longer sells policies or certain types of policies may fairly be viewed as disparaging its product. Moreover, the allegations of the Winn Parish petition must be construed liberally to determine whether a claim falls within Transportation's duty to defend. *Hardy*, 236 F.3d at 290.

■ Transportation has also argued that the activities alleged in the Winn Parish petition do not amount to advertising,

and thus, plaintiffs cannot be potentially liable for an advertising injury covered by the Policy. In so arguing, it has pointed the Court to a line of cases from other circuits that have held that individual solicitations do not constitute advertising as contemplated in policies like the one in issue, but rather that "[a]dvertising ... refers to dissemination of prefabricated promotional material." *Zurich Ins. Co., v. Amcor Sunclipse North America*, 241 F.3d 605, 607 (7th Cir.2001). The Court considers defendant's proposed definition of "advertising" a strained construction of the term, which it notes is nowhere defined in Transportation's policy. Rather, in the absence of a contractually specified definition, the Court considers that the common-sense understanding of the term "advertising" is appropriate, and while it would obviously include the dissemination of prefabricated promotional material, it is broader than that. At any rate, it would certainly include "Causing ... advertisements to be issued directly to Fund members by direct mail and facsimile by use of the Fund's confidential renewal list." Petition, ¶ 7. Moreover, to the extent Transportation's failure to define advertising within the policy has created ambiguity as to how the term should be interpreted, "ambiguous provisions in insurance policies are strictly construed against the insurer in favor of coverage to the insured." *Hardy*, 236 F.3d at 290.

■ Finally, the Court considers whether the Policy contains any exclusion applicable to the facts at hand. Transportation has suggested that because the Winn Parish petition alleges intentional acts on the part of the Winn Parish defendants, coverage is excluded by the policy language which states that the insurance does not apply to advertising injuries "[a]rising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity."

As the Court noted on the record, the Winn Parish petition contains several references to the scienter possessed by the Winn Parish defendants. *See* Winn Petition, ¶¶ 3, 7, 13 & 17. However, close scrutiny reveals that the allegations are that the defendants knowingly used information illegally obtained to lure away Fund customers. Nowhere is it alleged that the Winn Parish defendants disseminated information that they knew to be false. Thus, this exclusion does not preclude coverage.

Based on the foregoing discussion, the Court finds that Transportation's duty to defend was triggered by the Winn Parish petition, because it contains allegations which arguably fall within the definition of "advertising injury" as defined in the policy, and no exclusions conclusively bar coverage based on a review of the four corners of the petition and the policy. Accordingly, plaintiffs' Motion for Partial Summary Judgment on Transportation Insurance Company's duty to defend should be granted.

## II. Coverage

■ Defendants Transportation and Continental Casualty company have moved for summary judgment seeking dismissal of all claims against them, arguing that there is no coverage because plaintiffs failed to comply with the notice requirements of the insurance contract. In so arguing, they point to the following language contained in their policies:

(a) If a claim is made or "suit" is brought against any insured, you must:

· · ·

(2) notify us as soon as practicable.

You must see to it that we received written notice of the claim or "suit" as soon as practicable.

(c) You and any other involved insured must

(1) Immediately send us copies of any demands, notices, summons or legal papers received in connection with the claim or "suit";

Transportation Policy, Rec. Doc. 25, Exh. B, Businessowners' Liability Coverage Form, Section E, General Conditions.

Also:

b. In the Event of Claims or Suit

Immediate written notice shall be given by you to us whenever:

(1) A claim is made or "suit" is brought against you;

Continental Policy, Rec. Doc. 25, Exh. C, Commercial Umbrella Plus Coverage Part, Section IV, Conditions.

Additionally, both policies contain "no action" clauses. The Transportation policy states that "[n]o person or organization has a right under this policy to sue us on this policy unless all of its terms have been fully complied with." Transportation Policy, Louisiana Changes Endorsement G–23145–A17. The Continental policy states that "[n]o legal action shall be brought against us unless you have fully complied with all the terms of this policy...." Continental Policy, Commercial Umbrella Plus Coverage Part, Section IV, Conditions, 3.

Transportation and Continental argue that because the Winn Parish lawsuit was filed on October 18, 1999, and they did not receive actual notice of the suit until December 29, 2000, plaintiffs failed to comply with the notice provisions and, because all terms were not complied with, under the "no action" clauses, no coverage exists.

In making this argument, defendants rely on the Fifth Circuit's decision in *MGIC Indemnity Corp. v. Central Bank of Monroe*, 838 F.2d 1382 (5th Cir.1988). In *MGIC*, Central Bank suffered financial losses as the result of the error of a former bank officer who granted a liberal letter of credit in late February of 1981. Following a judgment in favor of the creditor on drafts submitted on the letter of credit, which was overturned on appeal, the bank and its creditor settled their claim. On June 25, 1982, while the appeal was pending, and before any claim had been made against the former bank officer, Central notified MGIC, the writer of Central's "claims-made" D & O liability policy, that it had become aware of occurrences which might result in a future claim on the policy. After the settlement (in which MGIC participated) was finalized, MGIC sued for a declaratory judgment that it was not liable for Central's loss. The jury returned a verdict for MGIC, finding that Central's officer had committed an error that would have been covered under the policy, but that MGIC had not been given notice and as a result, was prejudiced.

The Fifth Circuit affirmed the verdict, but on different grounds. It rested its holding on the following policy language:

The Bank or the Directors or Officers shall, **as a condition precedent** to their rights under this policy, give to the Insurer notice in writing as soon as practicable of any claims made and shall give the Insurer such information and cooperation as it may reasonably require.

838 F.2d at 1384, quoting MGIC D & O Policy, ¶ 6(a) (emphasis added).

The Court stated:

We hold that the language stating that compliance with this provision is a condition precedent to recovery under the policy means exactly what it says, and that if Central failed to comply with this

provision by not giving MGIC timely notice of the claim made, then the claim will not be covered under the policy regardless of whether MGIC can demonstrate prejudice.

*Id.* at 1385–86.

Based on this holding, defendants argue that coverage is not owed to the plaintiffs because the notice provisions, when read together with the "no action" clauses contained in their policies, operate as suspensive conditions/conditions precedent like the one contained in the quoted language from the *MGIC* case, and, like the insured in *MGIC*, plaintiffs failed to satisfy the suspensive condition/condition precedent, thereby precluding coverage under the policy. Defendants further assert that the fact that their policies do not contain the express term "condition precedent" is immaterial, since the effect of the language it does contain is to create a condition precedent. On this point, they cite the Court to *Joslyn Manufacturing Company v. Liberty Mutual Insurance Company*, 30 F.3d 630 (5th Cir.1994), *cert. denied*, 513 U.S. 1127, 115 S.Ct. 935, 130 L.Ed.2d 881 (1995); *Jackson v. Transportation Leasing Co.*, 893 F.2d 794 (5th Cir.1990) and *Auster Oil and Gas v. Stream*, 891 F.2d 570 (5th Cir.1990).

It appears to the Court that *MGIC* is distinguishable from the instant case on at least two grounds. First, the holding in *MGIC* rests at least in part on the fact that the insurance contract expressly stated that notice was a **condition precedent** to the contract, using that precise term. The policies at issue in the instant case, however, do not contain that precise term; rather, defendants ask the Court **infer** that prompt notice is a condition precedent by reading the notice provision together with the "no action" clause. Moreover, in the *Joslyn* and *Auster Oil* cases (cited by defendants for the proposition that the

exact words "condition precedent" are not required) the insurance contracts **did contain** an express condition precedent clause, using that exact term. In fact, *Auster Oil* explicitly recognized that *MGIC* distinguished those Louisiana cases in which a showing of prejudice was required on the basis that the "the policies in those cases did not contain express language that the notice requirements were a condition precedent to coverage." 891 F.2d 570, 576 n. 8. While the *Jackson* opinion does not excerpt any policy language, the Court presumes that the policy there also contained an express condition precedent clause, because the court in Jackson stated that its holding was based on the *Auster Oil* holding (which in turn relied on *MGIC*), and summarized the MGIC holding as follows: "under Louisiana law, the insurer need not show prejudice where an insurance policy makes timely notice an **express condition precedent** to coverage." 893 F.2d at 795 (emphasis added). Moreover, in the only two district court opinions located in which a district court in the Fifth Circuit, relying on *MGIC*, granted summary judgment denying coverage based on a notice provision that did not contain the express term "condition precedent," the courts were reversed. *See, Homestead Ins. Co. v. Zar*, 1993 WL 346191 (E.D.La. Sept.1, 1993), *rev'd*, 18 F.3d 936 (5th Cir.1994); *see also, Gulf Island IV, v. Blue Streak Marine, Inc.*, 940 F.2d 948 (5th Cir.1991). In this case, while defendants argue strenuously that a condition precedent is implied in the contract, they cannot point to an express condition precedent, which is required by controlling law.

■■■ A second factor which distinguishes the instant case from *MGIC* is that the policy in *MGIC* was a "claims-made" policy, while the policy in our case appears to be an "occurrence" policy. A

"claims-made" policy covers the insured for claims-made during the policy period, regardless of when the covered act or omission occurred. *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 659 n. 2 (5th Cir.1999). An "occurrence" policy, on the other hand, provides coverage for acts or omissions that occur within the policy period, whether or not the insured or the insurer learns of the claim during the policy period. *Id.*

 Because of the different nature of these two types of policies, the notice provisions in each serve different purposes: "In occurrence based polices, the notice requirement is generally required to aid the insurer in administration of its coverage of claims; in claims-made policies, the notice requirement actually serves to aid the insured by extending claims-made coverage beyond the policy period." *FDIC v. Booth*, 82 F.3d 670, 678 (5th Cir.1996). In a claims-made policy, notice to the insurer is not simply a "technical defense" to a claim, it defines the obligation of the insurer and the rights of the injured party. *FDIC v. Caplan*, 838 F.Supp. 1125, 1131 (W.D.La.1993) (citations omitted). In essence, the very peril insured against in a claims-made policy is the insured's discovery and notice of claims. *Id.* The reporting requirement thus serves to define the scope of coverage by providing a date certain after which an insurer knows it no longer has exposure under the policy. *RTC v. Ayo*, 31 F.3d 285, 289 (5th Cir.1994). For this reason, notice requirements in claims-made policies are strictly construed.[2] *Id.; see also, Booth*, 82 F.3d at 678; *FDIC v. Barham*, 995 F.2d 600, 605 n. 9 (5th Cir.1993). However, in the case of an occurrence policy, no such justification is present to alter the usual rule that provisions which serve to limit coverage under the policy should be strictly construed against the insurer. *Reynolds v. Select Properties, Ltd.*, 634 So.2d 1180, 1183 (La.1994).

 "Under Louisiana law, the insurer cannot deny coverage merely because its insured failed to give notice of loss as soon as practicable." *Peavey Company v. M/V ANPA*, 971 F.2d 1168, 1172 (5th Cir.1992) (citations omitted).[3] "Rather, to deny coverage on the basis that it did not receive notice as stipulated in the policy, the insurer must show 'actual prejudice.'" *Id.* (citations omitted). *MGIC* (which predates *Peavey* ) and its progeny do not alter this long-standing rule of Louisiana law; they simply reflect the fact that parties can, by

2. In a sense, it may be said that notice is always a condition precedent in a claims-made policy, whether express or not, because by definition, there is no coverage under the policy until notice is made. In contrast, to contract for a clause that makes immediate notice an express condition precedent in an occurrence policy, is to give undue deference to a technical defense, because the insurer's exposure is linked to when the covered act or omission occurred, not to when the insurer learns of it.

3. It is worth noting here that it is not conclusively established that defendants did not receive timely notice. Apparently, defendants forwarded notice to Palmer & Cay, the agent which sold them the Transportation and Continental policies as well as a Fireman's Fund policy, within a few days of the filing of the suit. The covering letter, however, referenced only the policy number of the Fireman's Fund policy, so Palmer & Cay did not forward notice to Transportation and Continental. However, plaintiffs argue that under applicable agency principles, notice to Palmer & Cay was tantamount to notice to those insurers for whom it sold policies, and thus that Transportation and Continental were notified timely. Because the Court has decided this motion on other grounds, the agency arguments are not fully explored herein. The Court notes however, that genuine factual questions surrounding the notice/agency issue would preclude summary judgment on that point.

express provision, contract for an alternative to the default "notice-prejudice" rule. *See, Livingston Parish School Board v. Fireman's Fund American Ins. Co.*, 282 So.2d 478 (La.1973). Accordingly, defendants must show that they were prejudiced by the delay, and they have made no showing in this regard. Therefore, they are not entitled to summary judgment on this issue.

### III. Reimbursement of Pre–Notice Defense Costs

██ Transportation also argues that it is not required to reimburse the insureds for their pre-notification defense costs. In support of this argument, Transportation asserts that the Fifth Circuit misconstrued Louisiana law when it held, in *Peavey Company v. M/V ANPA*, 971 F.2d at 1178, that fees incurred prior to notice are recoverable when the insurer has not been prejudiced by the late notice. Transportation's arguments notwithstanding, this Court is bound by the law of the Fifth Circuit, and on this point, *Peavey* is clear. Because Transportation has not demonstrated, or even argued, prejudice, its duty to defend encompasses the insured's pre-notification costs.

### IV. Pro rata coverage payments

Transportation has also argued that in the event there is coverage, it should be required to pay only pro rata with other insurers. The Court's ruling on the coverage issue presented is limited to finding that the notice provisions contained in the Continental and Transportation policies do not preclude coverage. It does not find that coverage necessarily exists, nor could it on the record before it. Accordingly, because fact issues remain (in fact, some of the defendant insurers' policies are not even in the record as of now) it does not reach the question of what portion any

insurer may subsequently be required to pay. Accordingly;

**IT IS ORDERED** that plaintiffs' **Motion for Partial Summary Judgment** on duty to defend (Rec.Doc. 21) should be and is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that defendants' **Motion for Summary Judgment** denying coverage (Rec.Doc. 25) should be and is hereby **DENIED**.